**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**SHIRLEY JOHNSON**                                                    **PLAINTIFF**

**v.**                                              **Civil Action No. 4:25-cv-205-RPC-JMV**

**HUMPHREYS COUNTY SHERRIF'S**
**DEPARTMENT, et. al.**                                        **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff brings this civil rights action against Defendants Humphreys County Sheriff's Department (HCSD), Humphreys County, Mississippi, the Humphreys County Board of Supervisors, Sheriff Bruce Williams (Defendant Williams), Chief Deputy Truron Grayson (Defendant Grayson), and Interim Sheriff Mickey Foxworth. Plaintiff's Amended Complaint alleges that she was fired from her position at the HCSD in violation of her First, Fourth, and Fourteenth Amendment rights, and that she was discriminated against on the basis of her sex and age.

Before the Court are Defendant Grayson's [40] Motion for Judgment on the Pleadings and Defendants HCSD and Defendant Williams' [47] Motion for Judgment on the Pleadings. Plaintiff timely responded to both motions and the Defendants filed reply briefs. For the reasons stated herein, the Court finds that both motions are well-taken and hereby **GRANTED**. Accordingly, all claims against Defendant Williams, Defendant Grayson, and the Humphreys County Sheriff's Department are **DISMISSED WITH PREJUDICE**.

### *Procedural History*

Plaintiff originally filed this action *pro se* on December 29, 2025. *See* [Doc. 1]. Defendant Humphreys County Board of Supervisors and Defendant Williams filed a Motion to Dismiss on March 5, 2026. *See* [Doc. 15]. Plaintiff obtained legal counsel soon after. *See* [Doc. 20]. Plaintiff

1

then, through counsel, filed a Motion to Amend the Complaint [Doc. 21], which the Court terminated as moot because she remained entitled to amend the Complaint once as a matter of course. *See* [Doc. 25]. Accordingly, Plaintiff's [22] Amended Complaint became the operative complaint, and Defendants' [15] Motion to Dismiss was also denied as moot. Then, on April 14, 2026, Defendant Grayson filed his [40] Motion for Judgment on the Pleadings. Defendant HCSD and Defendant Williams also filed their [47] Motion for Judgment on the Pleadings on April 17, 2026.

### *Relevant Background*

Plaintiff's Amended Complaint alleges that she was fired from the HCSD without due process, subject to retaliatory employment actions in violation of the First Amendment, and denied equal protection of the law. She further alleges that Defendants conducted unlawful and pretextual inquiries into her certification records as a basis for termination, and that she was subjected to both age and gender discrimination. Plaintiff also asserts that HCSD and Williams maintained and implemented unconstitutional policies and customs concerning hiring, firing, retaliation, and employee targeting.

Plaintiff alleges that she began working at the Belzoni Police Department (BPD) in 2004 under Defendant Foxworth, who was then Chief of Police.[1] [Doc. 22 at 6]. Defendant Grayson also worked for BPD at that time, and Defendant Williams began his tenure shortly thereafter. *Id.* Plaintiff alleges that a history of gender discrimination involving Defendant Grayson and others originated during her employment at BPD and continued when she later joined HCSD. Based on these alleged events, Plaintiff previously filed charges with the Equal Employment Opportunity Commission (EEOC) against BPD and Defendant Foxworth. *Id.*, **Ex. A**. Plaintiff asserts that, upon

---

[1] The Court notes that the Belzoni Police Department and/or the City of Belzoni are not listed as defendants in this action.

information and belief, all Defendants in this action were aware of this prior EEOC activity. *Id.* at 6.

After leaving BPD and taking a brief position elsewhere, Plaintiff took approximately a ten-year hiatus from active-duty law enforcement and worked in law enforcement consulting. *Id.* During that time, she alleges that Defendant Williams recruited her to join HCSD following his election as sheriff. *Id.* at 6-7. Plaintiff accepted and began working for the HCSD on December 22, 2022. *Id.* at 7. Shortly thereafter, Defendant Grayson was also hired as Defendant Williams' "second in command" and "began targeting the Plaintiff with adverse employment activity and efforts to demean and diminish the Plaintiff in her new role as Captain[.]" *Id.* One of these adverse activities included orchestrating "the taking of her assigned vehicle and leaving her with no vehicle or downgraded vehicle usage in comparison to other subordinate male officers[.]" *Id.*

Plaintiff alleges that on April 8, 2023, Defendant Grayson terminated her after she reported concerns about his conduct to Defendant Williams, and that Defendant Williams "permitted the unlawful, retaliatory and mentally and emotionally demeaning action." *Id.* Defendant Grayson allegedly terminated Plaintiff without providing "notice, warning, opportunity for any corrective action, and without any hearing or review." *Id.* Following the termination, it is alleged that the HCSD "fraudulently identified…Plaintiff's termination as a resignation to avoid following any departmental procedures or legal requirements[.]" *Id.* at 7-8.

Almost a year after her first termination, on March 1, 2024, Plaintiff was re-hired by Defendant Williams to work in an internal investigations role. *Id.* at 8. And, once again, Plaintiff was allegedly met with targeted attacks by Defendant Grayson. *Id.* She was also removed from the internal investigations position by Defendant Williams and placed on part-time patrol. *Id.* Once she was placed on patrol, "Grayson came after the Plaintiff's job again" by terminating her "under

the pretext that she [was] not able to work [at the sheriff's department] because she [was] not certified." *Id.* Plaintiff alleges that Defendant Grayson's "inquiry and search of Plaintiff's certification status was unauthorized[,]…unlawful[,] and an invasion of her privacy." *Id.* Plaintiff asserts that Defendant Grayson discovering her certification issues contributed to a "witch hunt to find something to use against the Plaintiff and further harass, retaliate, and inflict emotion distress upon her." *Id.* Based on these certification issues, Defendant Grayson fired Plaintiff again. She alleges that Grayson's inquiry into her certification status "provided an unlawful pretext for [her] termination and [Defendant] Williams permitted the unlawful action against her." *Id*.

Plaintiff was re-hired by Defendant Williams *again* on March 17, 2025, and *again* was allegedly "met with targeted attacks from Grayson." *Id.* at 9. She alleges that while Defendant Grayson was out on sick leave, she was assigned to his patrol vehicle. *Id.* When Grayson returned to work, "his first action was to reclaim his vehicle from the Plaintiff and purposely refused to assign her another vehicle, leaving her unable to conduct" patrols. *Id.* Plaintiff contends this was done "in additional retaliation and in an effort to demean, harass and undermine" her. *Id.*

Grayson also allegedly "lodge[d] unjustified and unwarranted criminal allegations" against Plaintiff, which resulted "in her being placed under internal investigation" with the sheriff's department. *Id.* at 10. Then, on May 20, 2025, Defendant Grayson once again fired Plaintiff, this time providing notice, but still without warning, cause, or a legal basis, and in an effort to further demean, harass, and retaliate against her. *Id.*, **Ex. G**. The very next day, Defendant Williams re-hired Plaintiff. *Id.* And, once again, Defendant Grayson continued to "harass, retaliate, and target" her. *Id.* Finally, Plaintiff was terminated by Grayson one final time in July of 2025. *Id.*

4

Plaintiff asserts multiple causes of action based on the foregoing allegations. Count I[2] charge "Defendants" with violating her civil rights pursuant to 42 U.S.C. § 1983. Plaintiff asserts that the Defendants deprived her of certain constitutional and statutory rights. She claims that her rights under the First, Fourth, and Fourteenth Amendments were violated, including the right to freedom of speech, the right to be free from unreasonable searches and seizures, the right not to be deprived of life, liberty, or property without due process, and the right to equal protection under the law. She also brings claims under Title VII and the Age Discrimination in Employment Act (ADEA).[3] These claims include the protection of people forty years of age or older from workplace discrimination, gender discrimination, and protection against retaliation for engaging in protected activity.

Count II also brings claims pursuant to 42 U.S.C. § 1983 against "Defendants" for failure to implement appropriate policies. The Amended Complaint alleges that "Defendants…implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that included, among other things, unlawful hiring and firing actions, retaliation for protected activities, fraudulent activity and targeting of employees for mistreatment and persecution." [Doc. 22 at 13]. Count II also asserts liability under a failure-to-train and failure-to-supervise theory. Plaintiff contends that such failures "amounted to deliberate indifference to the rights of the Plaintiff under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and under [f]ederal law through Title VII and the ADEA."

---

[2] The Court notes that the [22] Amended Complaint does not numerically list the counts. However, for purposes of clarity, the Court denotes count numbers.

[3] *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634.

Count III brings a claim for violation of Title VII for gender discrimination. The Amended Complaint alleges that "Defendants participated in a campaign of disparate treatment [*sic*] harassment against the Plaintiff in her employment by treating the Plaintiff differently from similarly situated males in her position[.]" [Doc. 22 at 13]. Similarly, Count IV brings a claim for violation of Title VII for retaliation. Plaintiff alleges that "Defendants participated in retaliatory activity because of Plaintiff's prior engagement in EEOC[.]" *Id.* at 14. Lastly, Count V asserts a claim for violation of the ADEA for age discrimination. *Id.* at 15.[4]

### *Analysis*

### I.   <u>Standard of Review</u>

"The standard governing dismissal for failure to state a claim under Rule 12(b)(6) is the same as that for dismissal under Rule 12(c)." ***Williams v. Bracey***, No. 4:25-cv-RPC-JMV, 2026 U.S. Dist. LEXIS 104572, at *10 (N.D. Miss. May 12, 2026). Under Rule 12(c), the Court is "generally limited to the contents of the pleadings, including attachments thereto." ***Miller v. Thigpen***, No. 2:24-cv-97-HSO-BWR, 2025 U.S. Dist. LEXIS 96746, 2025 WIL 1461831, at *2 (S.D. Miss. May 21, 2025). Such motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings[.]" *Id.* Courts may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." ***Dorsey v. Portfolio Equities, Inc.***, 540 F.3d 333, 338 (5th Cir. 2008).

---

[4] The last un-numerated count asserts "state law tort claims." *Id.* The Amended Complaint asserts that the "Defendants" acts or omissions "constitute the commission of several torts under state law[.]" *Id.* Plaintiff states she "has just recently completed her notice of claim to be filed against the Defendants for violations covered by the Mississippi Tort Claims Act" and "reserves the right to amend this Complaint to include" such violations. *Id.* at 15-16. To the extent the Amended Complaint asserts any state law claims against these Defendants, it does not change the Court's analysis and holding.

To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim upon which relief can be granted.'" ***In re Great Lakes Dredge & Dock Co. LLC***, 624 F.3d 201, 210 (5th Cir. 2010) (quoting ***Ashcroft v. Iqbal***, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. ***Shakeri v. ADT Sec. Servs., Inc.***, 816 F.3d 283, 290 (5th Cir. 2016); *see also* ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." ***Iqbal***, 556 U.S. at 678. While a complaint does not need detailed factual contentions, the "allegations must be enough to raise a right to relief above the speculative level." ***Twombly***, 550 U.S. at 555. Accordingly, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." ***Turner v. Lieutenant Driver***, 848 F.3d 678, 685 (5th Cir. 2017) (quotation omitted). "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead facts which, if proved, would defeat the claim of immunity." ***Murry v. City of Indianola***, 2024 U.S. Dist. LEXIS 186614, at *16-17 (N.D. Miss. July 19, 2024) (quoting ***Guerra v. Castillo***, 82 F.4th 278, 285 (5th Cir. 2003)); *see also* ***Waller v. Hanlon***, 922 F.3d 590, 599 (5th Cir. 2019).

## II. <u>Claims against the Sheriff's Department</u>

The two motions before the Court are brought only by the HCSD, Defendant Williams, and Defendant Grayson. Thus, the claims asserted against the other defendants and their defenses thereto are not addressed herein. First, the Court will assess the claims against the HCSD and whether they plausibly state claims upon which relief can be granted. HCSD argues that all claims

against it should be dismissed entirely because it is not a separate legal entity capable of being sued.

Under the Federal Rules of Civil Procedure, the capacity of an entity to sue or be sued is "determined by the law of the state in which the district court is held." Fed. R. Civ. P. 17(b); ***Darby v. Pasadena Police Dep't***, 939 F.2d 311, 313 (5th Cir. 1991). "Although the Mississippi Code authorizes suit against 'every municipality of this state,' it does not authorize suit against a municipality's police or sheriff's department." ***Holliday v. Monroe Cnty.***, No. 1:24-cv-82-SA-DAS, 2025 U.S. Dist. LEXIS 49020, at \*6 (N.D. Miss. Mar. 18, 2025) (citing Miss. Code Ann. § 21-17-1(1)); ***Jackson v. City of Gulfport***, No. 1:16-cv-420-LG-RHW, 2017 U.S. Dist. LEXIS 22327, \*4 (S.D. Miss. Feb. 16, 2017). This Court, the Southern District of Mississippi, the Mississippi Supreme Court, and the Fifth Circuit have all held numerous times that a sheriff's department "is not a separate legal entity that may be sued. Rather, it is an extension of the" municipality. ***Id.*** (citing ***Jackson***, 2017 U.S. Dist. LEXIS 22327, at \*4); *see also* ***Brown v. Thompson***, 927 So. 2d 733, 737 (Miss. 2006) (holding that a sheriff's department does not enjoy a separate legal existence apart from the county in which it operates and is therefore not subject to suit); ***Jauch v. Choctaw Cnty.***, 874 F.3d 425 (5th Cir. 2017) (holding that a sheriff is the official law enforcement policymaker for a county, rendering the county, not the sheriff's department, liable for the official law enforcement decisions of the sheriff.).

In light of the abundance of existing authority explaining that HCSD is incapable of being sued and therefore not a proper party to this action, the Court hereby dismisses all claims asserted against it. For this reason, the Court does not address any claims asserted against the department.

III.     **Claims against Defendant Williams and Defendant Grayson**

Having determined that the claims against the HCSD fail as a matter of law, the Court now turns to the claims against the individual defendants – Defendant Williams and Defendant Grayson. Both remaining Defendants have raised the defense of qualified immunity.

a.     Title VII and ADEA Claims

As a preliminary matter, neither Defendant Grayson nor Defendant Williams can be individually liable for Plaintiff's Title VII claims. *See Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 n.8 ("[R]elief under Title VII is available only against an employer, not an individual supervisor or fellow employee."); *see also Carpenter v. Miss. Valley State Univ.*, 807 F. Supp. 2d 570, 587-88 (N.D. Miss. 2011) (collecting cases). Accordingly, the Court concludes that Plaintiff's Title VII claims may not proceed against Defendant Grayson or Defendant Williams, as Title VII liability does not attach to individuals acting in their individual capacity.

Similarly, the Defendant Grayson and Defendant Williams cannot be individually liable for Plaintiff's ADEA claim. *See Rush v. Thompson*, No. 3:25-cv-6-TSL-ASH, 2025 U.S. Dist. LEXIS 167689, at *4 (S.D. Miss. Aug. 28, 2025); *Springfield v. Page*, No. 4:18-cv-234-SA-JMV, 2019 U.S. Dist. LEXIS 102202, at *4 (N.D. Miss. June 19, 2019); *Ackel v. Nat'l Commc'n., Inc.*, 339 F.3d 376, 380 (5th Cir. 2003); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001); *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996); *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 247 (5th Cir. 2017) (noting that "the ADEA provides no basis for individual liability for supervisory employees"). Accordingly, Plaintiff's Title VII and ADEA claims against Defendant Grayson and Defendant Williams fail as a matter of law and must be dismissed.

b.     Official Capacity Claims

Plaintiff also asserts claims against Defendant Williams and Defendant Grayson in their official capacities. "To the extent Plaintiff asserts claims against [the individual defendants] in [their] official capacity, those claims likewise fail." ***Thomas v. Bolivar Cnty.***, No. 4:26-cv-3-RPC-JMV, 2026 U.S. Dist. LEXIS 102369, at *7-8 (N.D. Miss. May 8, 2026). This is because "suits against officers in their official capacities are tantamount to suits against the municipality." ***Id***. at *8 (citation omitted). "Because [Humphreys County] is a defendant to this action, any official capacity claims against" Defendant Williams and Defendant Grayson "would be redundant of those against the County and should also be dismissed." ***Id***. (citing ***Sanders-Burns v. City of Plano***, 594 F.3d 366, 373 (5th Cir. 2010)). Accordingly, any claims against Defendant Grayson and Defendant Williams in their official capacity are dismissed.

    c.      <u>Constitutional Claims</u>

Having found that Plaintiff fails to state a viable Title VII or ADEA claim against the individual defendants, the Court turns to Plaintiff's § 1983 claims. Plaintiff alleges that her constitutional rights under First, Fourth, and Fourteenth Amendments were violated by Defendant Grayson and Defendant Williams. Both Defendants have raised the defense of qualified immunity.[5]

    d.      <u>42 U.S.C. § 1983 and Qualified Immunity</u>

Section 1983 creates a private right of action for the deprivation of certain rights. 42 U.S.C. § 1983. To state a valid cause of action under Section 1983, a plaintiff must (1) allege that the defendants violated a right secured by the Constitution or the laws of the United States, and (2) show that a person acting under the color of state law committed the violation. ***Petersen v.***

---

[5] The parties' briefs discuss whether qualified immunity is appropriate without discovery. As the Fifth Circuit has held, "[w]here, as here, an individual defendant invokes qualified immunity, 'the court has an obligation to carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery.'" ***Rosenburg v. City of Ocean Springs***, No. 1:25-cv-182-HSO-BWR, 2026 U.S. Dist. LEXIS 37376, at *15 (S.D. Miss. Feb. 24, 2026) (quoting ***Longoria ex rel. v. San Benito Indep. Consol. Sch. Dist.***, 942 F.3d 258, 263-64 (5th Cir. 2019)); *see also* ***Carswell v. Camp***, 54 F.4th 307, 310 (5th Cir. 2022) (explaining courts must addresses the defense of qualified immunity "at the earliest possible stage of litigation").

*Johnson*, 57 F.4th 225, 231 (5th Cir. 2023). Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *see also Ashcroft*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."). When an individual defendant invokes the defense, "a plaintiff has the burden of establishing a constitutional violation and overcoming the defense." *Paixao v. City of Greenwood*, No. 4:23-cv-047-GHD-JMV, 2024 U.S. Dist. LEXIS 1199, at *7 (N.D. Miss. Jan. 2, 2024) (citing *Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2020) (per curiam) (en banc)).

"To determine whether a public official is entitled to qualified immunity, courts decide (1) whether the facts the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Triplett v. Swindle*, No. 1:24-cv-201-GHD-RP, 2026 U.S. Dist. LEXIS 6505, at *5 (N.D. Miss. Jan. 12, 2026) (citing *Doe v. Jewell*, 151 F.4th 236, 244-45 (5th Cir. 2022). "The Court's first and threshold inquiry is whether the facts alleged, taken as true, make out a violation of a constitutional right." *Thomas*, 2026 U.S. Dist. LEXIS 102369, at *6. "Crucially, a plaintiff's inability to establish an underlying constitutional violation forecloses any chance of recovery against an individual defendant who asserts qualified immunity." *Id.* (citing *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007)). Accordingly, the Court first determines whether Plaintiff's allegations, taken as true and in the light most favorable to her, provide a basis for a violation of her constitutional rights.

11

Moreover, when analyzing claims of qualified immunity, the Court must assess each defendant's actions or inactions individually. *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018). A supervisory official may be held liable for a constitutional violation "only if (1) he affirmatively participates in the acts that cause the constitutional violation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

### i. First Amendment Violation

Plaintiff's Amended Complaint pleads a First Amendment Retaliation claim by stating that she "was targeted and singled out for performing her duties, speaking truthfully and honestly about issues and concerns within law enforcement to her fellow officers and wider community, and for refusing to be silent in the face of misconduct and violations of laws, rules, and regulations[.]" *Id.* at 4.[6] Plaintiff also alleges that after Defendant Grayson orchestrated the taking of her assigned patrol vehicle, she "raise[d] concerns about [Grayson's] conduct to [Defendant] Williams." *Id*. at 7. In retaliation for raising these concerns to Defendant Williams, Defendant Grayson then fired Plaintiff, and Defendant Williams condoned the "unlawful" termination. *Id*. at 7.

EEOC / Retaliation Argument

First, Plaintiff appears to argue in response to Defendant Grayson's motion—without meaningful elaboration—that Defendants violated her First Amendment rights by retaliating

---

[6] The Amended Complaint also alleges that the "Defendants" collectively "[i]n committing the acts of complained of herein," violated Plaintiff's "right to freedom of speech" under the First Amendment. [Doc 22 at 11-12]. At the outset, it is difficult for the Court to discern what factual allegations are alleged against which Defendants, as the Amended Complaint groups the "Defendants" together throughout. Plaintiff's allegations almost never tie or link an individual defendant's specific conduct to a specifically pled constitutional violation. The lack of specificity is especially problematic in 42 U.S.C. § 1983 claims because the Court must be able to evaluate the individual defendant's own actions under the qualified immunity analysis and whether such actions violated the statutory or constitutional rights of a plaintiff.

against her "for prior protected activity and ongoing speech regarding misconduct," namely, her prior Equal Employment Opportunity Commission (EEOC) charge against the Belzoni Police Department (BPD). [Doc. 53 at 4]. However, Plaintiff does not plausibly allege such a claim against either of these Defendants in their individual capacities as employees of HCSD.

Specifically, the allegations concerning Plaintiff's prior EEOC charge seem to be asserted against the Humphreys County Board of Supervisors (HCBOS). The Amended Complaint alleges that "Plaintiff was passed over for the position by HCBOS and, as a direct affront against the Plaintiff, in retaliation of her prior EEOC conduct and lawsuit, in order to harass and put her in her place as a woman, and for her age." [Doc. 22 at 11]. Moreover, these allegations appear in the Title VII portion of the Amended Complaint, rather than in the section asserting Plaintiff's § 1983 allegations. *See Id.* at 14. To be sure, Plaintiff also alleges that she "was subjected to sexual discrimination while at the Belzoni Police [D]epartment and filed EEOC charges…against [Defendant] Foxworth" and that "all the Defendant in this cause were aware of her [EEOC] lawsuit." *Id.* Even so, Plaintiff does not allege facts showing how either of these individual Defendants retaliated against her because of EEOC activity arising from alleged discrimination that occurred approximately twenty years earlier while she was employed by the BPD. Nor does she allege facts plausibly connecting any adverse action taken by these Defendants to that prior EEOC proceeding.

In any event, Plaintiff's allegations fail for the independent reason that "[l]odging a complaint with the EEOC, without further airing of grievances, implicates only the private employment interests of the plaintiff and is not conduct that constitutes speech on a matter of public concern." **Cutrer v. McMillan**, 308 F. App'x 819, 821 (5th Cir. 2009); *see also **Ayoub v. Tex. A&M Univ.***, 927 F.2d 834, 837 (5th Cir. 1991) (finding that the plaintiff "never attempted to

13

air" the complaints at the heart of the previous EEOC charge "in a manner that would call the public's attention to the alleged wrong"). Accordingly, Plaintiff fails to plausibly allege a First Amendment retaliation claim against these individual Defendants arising from her prior EEOC litigation against the BPD and Defendant Foxworth.

First Amendment Retaliation

The Court now considers Plaintiff's § 1983 claims against Defendant Williams and Defendant Grayson. The First Amendment prohibits adverse governmental action taken in retaliation for the exercise of protected speech. ***Cass v. City of Abilene***, 814 F.3d 721, 729 (5th Cir. 2016) (citing ***Keenan v. Tejeda***, 290 F.3d 252, 258 (5th Cir. 2002)). In the public employment context, however, not all speech by a government employee is constitutionally protected. At the pleading stage, a plaintiff and public employee asserting a First Amendment retaliation claim must plausibly allege: "(1) [she] suffered an adverse employment action; (2) [she] spoke as a citizen on a matter of public concern; (3) [her] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." ***Linville v. City of Biloxi***, No. 1:25-cv-328-HSO-BWR, 2026 U.S. Dist. LEXIS 121390, at *4 (S.D. Miss. June 2, 2026) (citing ***Johnson v. Miller***, 126 F.4th 1020, 1029 (5th Cir. 2025)); *see also* ***Briscoe v. Jefferson Cnty.***, 500 F. App'x 274, 277 (5th Cir. 2012).

The Amended Complaint sufficiently alleges that Plaintiff suffered adverse employment actions during her tenure with the HCSD, and the Defendants do not contest this point. *See* ***McElroy v. PHM Corp.***, 622 F. App'x 388, 390 (5th Cir. 2015) (Adverse employment actions include "hiring, firing, demotion, promoting, granting leave, and compensating."). This allegation is sufficient to satisfy the first prong of the test. The Court therefore turns to the remaining factors.

Privative Citizen and Matter of Public Concern

14

The second element of the First Amendment retaliation analysis is essential split into two separate inquiries: (1) whether a plaintiff was speaking as a public employee or a private citizen and (2) whether the speech addressed a matter of public concern. *See **Hawkland v. Hall***, 860 F. App'x 326, 331 (5th Cir. 2021). The Court's "threshold layer" is to determine whether a plaintiff spoke primarily as a private citizen or pursuant to her official duties as a public employee. ***Wetherbe v. Tex. Tech. Univ. Sys.***, 138 F.4th 296, 303 (5th Cir. 2025); ***Howell v. Town of Ball***, 827 F.3d 515, 523 (5th Cir. 2016); *see also **Gibson v. Kilpatrick***, 838 F.3d 476, 481 (5th Cir. 2016). The Fifth Circuit has explained that a public employee's speech is made pursuant to his official duties when it is "made in the course of performing his employment." ***Anderson v. Valdez***, 845 F.3d 580, 595 (5th Cir. 2016) (quoting ***Williams v. Dallas Indep. Sch. Dist.***, 480 F.3d 689, 694 (5th Cir. 2007)). Whether a plaintiff was speaking as an employee or citizen is a question of law for the Court to decide. ***Corn v. Miss. Dep't of Pub. Safety***, 954 F.3d 268, 277 (5th Cir. 2020).

The Fifth Circuit has recognized that if a public employee raises issues, concerns, or complaints up their organization's chain of command about his or her job duties, that speech is generally undertaken in the course of performing the job. *See **Davis v. McKinney***, 518 F.3d 304, 313 (5th Cir. 2008). This is because when a public employee's speech addresses only matters concerning her personal employment conditions, the speech is typically not protected. *See **Ayoub***, 927 F.2d at 837. If, however, Plaintiff plausibly alleges that she took her "job concerns to persons *outside the workplace* in addition to raising them up the chain of command," those external communications are ordinarily made as a private citizen. ***Davis***, 518 F.3d at 313 (emphasis added).

Here, Plaintiff alleges that she "was targeted and singled out *for performing her duties*, speaking truthfully and honestly about issues and concerns within law enforcement to her fellow

officers and *wider community*, and for refusing to be silent in the face of misconduct and violations of laws, rules, and regulations[.]" [Doc. 22 at 4] (emphasis added).

Looking to the Amended Complaint, the allegations as plead lead to the reasonable conclusion that this lawsuit centers on personal employer-employee grievances. Namely, the alleged orchestrated taking of Plaintiff's patrol vehicle, disagreements with supervisors, and multiple terminations. Even assuming Plaintiff discussed those matters outside the HCSD, such speech would still be directed toward a personal employer-employee dispute rather than a matter of public concern. *See Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005) ("Speech made solely in furtherance of a personal employer-employee dispute" is not transformed into public concern simply because the employee criticizes supervisors or workplace decisions).

Without additional factual allegations, the Court cannot reasonably infer that Plaintiff engaged in independent citizen speech rather than merely continuing a workplace dispute outside of the department. Although detailed factual allegations are unnecessary at the pleading stage, the allegations still must be well plead, must "raise a right to relief above the speculative level," and conclusory allegations alone are insufficient. *Wilson v. Houston Cmty. Coll. Sys.*, 955 F.3d 490, 500 (5th Cir. 2020); *Iqbal*, 556 U.S. at 678. Thus, the Court is without sufficient factual information to determine whether Plaintiff was speaking as a public employee pursuant to her official duties or as a private citizen.[7]

---

[7] Plaintiff also alleges that on March 1, 2024, she was re-hired to serve in an "internal investigations" role to specifically discover "misconduct" within the department. [Doc. 22 at 8]. While the Amended Complaint does not provide the date on which Plaintiff ceased working in the capacity with the department, any speech made revealing such misconduct would obviously be pursuant to her official duties in uncovering the misconduct and would not be protected. *See Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013) ("Activities required by one's position or undertaken in the course of performing one's jobs activities are pursuant to official duties.") (citing *Williams*, 480 F.3d at 689).

16

Even assuming Plaintiff plausibly alleged that she spoke as citizen, her claim fails for the independent reason that the Amended Complaint does not plausibly allege that her speech addressed a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).[8] Speech involves a matter of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Gibson*, 838 F.3d at 482 (internal citations and quotations omitted). By contrast, speech concerning only a superior's employment decisions or otherwise affecting the plaintiff in a purely personal manner generally does not qualify as speech on a matter of public concern. *Id.* at 485.

To determine whether speech involves a matter of public concern, the Court must evaluate "the content, form, and context of a given statement," *Id.* at 482, which is necessarily a fact-specific inquiry. *Wetherbe*, 138 F.4th at 304. The public concern requirement exists to prevent employees from relying on the Constitution for redress of personal grievances within the workplace. *Connick*, 461 U.S. at 146, and courts should "not interfere with personnel decisions 'when a public employee speaks…as an employee upon matters only of personal interest.'" *Page v. Delaune*, 837 F.2d 233, 237 (5th Cir. 1988) (quoting *Connick*, 461 U.S. at 147); *see also Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1577 (5th Cir. 1989) ("As a general rule, when an employee speaks about matters that are of personal interest only, the speech does not address matters of public concern.").

---

[8] *See also Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 881 (1968); *Connick v. Myers*, 461 U.S. 138, 147, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983); *Rankin v. McPherson*, 384 U.S. 378, 384, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987); *United States v. National Treasury Emples. Union*, 513 U.S. 454, 466, 115 S. Ct. 1003, 130 L. 3d. 2d 964 (1995).

17

Although the Fifth Circuit has recognized that the treatment of a public employee by supervisory officials may, in some sense, be characterized as a matter of public concern, it has cautioned that "because at some level of generality almost all speech is of public concern, [courts] must be careful not to conclude that speech is a matter of public concern merely because it involves public employees." *Gibson*, 838 F.3d at 485 (quoting *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993). "Indeed, management policies that [are] only interesting to the public by virtue of the manager's status as an arm of the government are not a matter of public concern as that legal term of art is properly understood." *Id*. And, at its core, an employment dispute is an "internal grievance." *Graziosi v. City of Greenville, Miss.*, 775 F.3d 731, 738 (5th Cir. 2015); *see also Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999) (concluding that speech made within the context of an employee-employer dispute weighed heavily against a finding that speech was of any concern to the public); *Salge*, 411 F.3d at 187.

Moreover, the Court does not dispute that exposing governmental misconduct may constitute speech on a matter of public concern. Indeed, the Fifth Circuit has recognized that "[i]t is well-established…that speech relating to official misconduct…almost always involves matters of public concern." *Charles v. Grief*, 522 F.3d 508 n.23 (5th Cir. 2008) (collecting cases). Likewise, "[t]here is perhaps no subset of matters of public concern more important than bringing official misconduct to light." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). This is especially true when a plaintiff is disclosing official misconduct within the confines of a sheriff's or police department. *See, e.g., Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2015); *Brawner v. City of Richardson, Tex.*, 855 F.3d 187, 191-92 (5th Cir. 1988). The difficulty here is not with these principles, but with Plaintiff's allegations as pleaded.

18

The allegation that Plaintiff reported misconduct to anyone outside of the HCSD appears only once in the Amended Complaint. Even then, Plaintiff fails to identify any actions by HCSD personnel that amounted to misconduct worthy of reporting to the public. As a result, the Court cannot meaningfully evaluate the content of Plaintiff's purported speech. Simply alleging that Plaintiff spoke about "misconduct," without identifying the conduct at issue, does not plausibly allege speech falling within the protections of the First Amendment. Additionally, as explained herein, all the allegations in the Amended Complaint viewed as a whole lead the Court to conclude that Plaintiff's allegations of misconduct concern her own employment and do not plausibly implicate a matter of public concern.

Even after Defendant Grayson specifically challenged the sufficiency of Plaintiff's factual allegations in his briefing, Plaintiff failed to explain how the alleged misconduct related to a matter of public concern, instead repeatedly arguing that speech relating to misconduct is categorically protected. That proposition is simply too broad. Labeling internal employment grievances as "misconduct," without more, does not provide the Court with sufficient context to conclude that the speech addressed "any matter of political, social, or other concern to the community" or "a subject of legitimate news interest." *Gibson*, 838 F.3d at 482.

In reaching the conclusion that Plaintiff's allegations concern only personal employment disputes, the Court looks no further than the Amended Complaint as a whole. Construed liberally, the Amended Complaint characterizes the following instances as misconduct: (1) officers erroneously citing plaintiff for criminal infractions and looking into her background records, [Doc. 22 at 5]; (2) Defendant Grayson orchestrating the taking of her assigned vehicle, *Id.* at 7; (3) her first termination conducted with no notice and in response to raising the vehicle issue to Defendant Williams, *Id*; (4) HSCD wrongfully identifying the termination as a resignation, *Id.* at 7-8; (5)

Plaintiff allegedly being "targeted against by Grayson and removed [from an internal investigations role] and placed on patrol," *Id.* at 8; (6) Defendant Grayson unlawfully searching Plaintiff's certification status and firing her because she was not certified, *Id*; (7) the HCSD labelling this second termination as a resignation, *Id.* at 9; (8) Defendant Grayson returning from sick leave and reclaiming his vehicle from Plaintiff and purposefully refusing to assign her another vehicle, *Id;* (9) Grayson alleging "unjustified and unwarranted criminal allegations against Plaintiff," *Id.* at 10; and (10) Grayson continuing to target Plaintiff and terminating her for a final time in July of 2025.

All of these allegations concern Plaintiff's own employment. While an employee speaking on interdepartmental misconduct may be a matter of public concern, a Plaintiff cannot merely label workplace disputes or personnel decisions as misconduct, even if they affect Plaintiff negatively, in order to invoke First Amendment protection. For example, other Courts have found that a public employee's misconduct-related speech addressed a matter of public concern when the employee revealed matters affecting public safety[9], misuse of funds[10], a cover-up of an officer's use of drugs[11], circumstances surrounding an officers misconduct and faulty search warrant in a shooting incident[12], an officer committed perjury[13], and other financial improprieties.[14] Plaintiff alleges nothing of this sort in this case.

---

[9] *Wilson v. City of Hattiesburg*, 369 F. Supp. 3d 711 (S.D. Miss. 2019).

[10] *Charles*, 522 F.3d 508.

[11] *Brawner*, 855 F.2d 187.

[12] *Id.*

[13] *Teague*, 179 F.3d 377.

[14] *Brown v. Texas A&M Univ.*, 805 F.2d 327 (5th Cir. 1986).

Even accepting all of Plaintiff's allegations above as true, assuming she communicated them to "wider community," they would not afford protection under the First Amendment. The Court is not concluding that merely alleging workplace misconduct can never be a matter of public concern. Rather, the Court cannot determine whether it was a matter of public concern because Plaintiff fails to allege what the misconduct actually was. The only clues at the Court's disposal are the allegations as plead in the Amended Complaint, and every one of those clues points to Plaintiff's personal employment disputes.

Similarly, Plaintiff has not pled sufficient facts to allow the Court to analyze the form of the purported speech. Plaintiff points to no authority, and the Court is unaware none, in which a plaintiff survived dismissal by alleging only that she spoke to the community about "misconduct" without providing any factual context regarding how the speech occurred. For example, Courts are often able to evaluate speech because the complaint identifies social media posts[15], articles written by the public employee[16], emails[17], a letter to a local news outlet[18], an alleged phone call[19], public testimony, or some other cognizable way to analyze the substance of a public employee's speech. Plaintiff provides nothing in comparison here. Accordingly, the Court is unable to assess what form

---

[15] *Norman v. Beaumont Indep. Sch. Dist.*, 2026 U.S. App. LEXIS 12590 (5th Cir. Apr. 30, 2026); *Stokes v. Boyce*, 2026 U.S. Dist. LEXIS 56912 (N.D. Miss. Mar. 16, 2026); *Gaines v. Jefferson Cnty. Sch. Dist.*, 705 F. Supp. 3d 664 (S.D. Miss. 2023); *McLin v. Twenty-First Judicial District*, 79 F.4th 411 (5th Cir. 2023).

[16] *Wetherbe*, 138 F.4th 296 (5th Cir. 2025); *Lowery v. Mills*, 157 F.4th 729 (5th Cir. 2025).

[17] *Charles*, 522 F.3d 508.

[18] *Brawner*, 855 F.2d 187.

[19] *Gramm v. Fire Dist. 9 DeSoto Par.*, 2025 U.S. Dist. LEXIS 112196, at *12 (E.D. La. June 12, 2025) (The Plaintiff alleging that he "called the Commissioners" about "the expenditure of public funds" and "the safety of the firefighters and the community," and the Court accepting those allegations as true, exemplified sufficiently pled allegations to surpass the pleading stage).

the Plaintiff's speech took when she spoke to the wider community, so this factor weighs in favor of the Defendants.

Lastly, as for the context of the speech, the Court must analyze "the underlying philosophical, political, and social circumstances surrounding an employee's speech." ***Vaughn v. Oktibbeha Cnty.***, 2025 U.S. Dist. LEXIS 184630, at *25 (N.D. Miss. Sept. 19, 2025) (citation omitted). "Speech is made in the context of a matter of public concern when it occurs 'against a backdrop of widespread debate in the community' rather than when it is 'made solely in furtherance of a personal employer-employee dispute." ***Id***. Again, the Amended Complaint provides no factual support for the Court to draw the reasonable inference that the alleged misconduct was any of interest to the community. To the contrary, all allegations lead to the reasonable conclusion that any alleged wrongdoing concerned Plaintiff's personal employment conditions. Accordingly, Plaintiff has failed to plausibly allege she spoke on a matter of public concern.

<u>Whether Speech Precipitated the Adverse Employment Decisions</u>

As for the final prong, Plaintiff must plausibly allege that the individual defendants' "animus against [her] exercise of First Amendment rights is a link in the casual chain that [led] to [her] firing." ***Jones v. Hosemann***, 815 F. App'x 235, 239 (5th Cir. 2020) (citation omitted).[20] Further to this point, Plaintiff must allege sufficient facts from which the Court could draw a plausible inference that her termination was causally connected to her speech and that the individual defendants were involved in the decision to terminate. ***Id***. at 240.

---

[20] Neither Defendants Williams and Defendant Grayson nor Plaintiff address the third element of a First Amendment retaliation claim concerning the balance between the plaintiff's interest in speaking and the government's interest in promoting the efficient provision of public services. Because consideration of that element would not affect the Court's analysis or ultimate conclusion, the Court does not address it.

The Amended Complaint falls short of this requirement because it does not plead a coherent chronology connecting Plaintiff's alleged speech to any of her terminations. Plaintiff alleges that she was terminated by the HCSD on four separate occasions but never alleges when she purportedly spoke to the "wider community" about the alleged misconduct. Without allegations identifying when the speech occurred, the Court cannot reasonably infer that the speech preceded any particular termination, much less that it substantially motivated the decision to terminate her employment.

This omission is significant because a First Amendment retaliation claim necessarily requires that the protected speech precede the alleged retaliatory action. If the speech occurred after one or more of Plaintiff's terminations, it could not have been the cause of those employment decisions. Yet the Amended Complaint provides no factual allegations permitting the Court to determine when Plaintiff spoke or which termination allegedly resulted from that speech.

Similarly, "[t]o prove a retaliation claim cognizable under the first amendment, the plaintiff must show that her speech was constitutionally protected and that it was a 'substantial' or 'motivating' factor in the defendant's decision." *Eriakha v. Univ. of Miss.*, 2026 U.S. Dist. LEXIS 143396, at \*28 (N.D. Miss. June 29, 2026) (quoting *Kelleher v. Flawn*, 761 F.2d 1079, 1083 (5th Cir. 1985). Retaliation can be "plausibly inferred" through "a chronology of events." *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997). Here, however, the Amended Complaint pleads no chronology from which the Court can infer causation. It does not allege when Plaintiff spoke, to whom she spoke, or which of her four terminations allegedly resulted from that speech. Without those factual allegations, Plaintiff has failed to plausibly allege that her speech precipitated any adverse employment action.

23

Lastly, much of the Court's analysis of Plaintiff's First Amendment retaliation claim turns on her failure to plausibly allege facts sufficient to state such a claim. Plaintiff has already amended her Complaint once as a matter of course in response to a previously filed motion to dismiss. See [Doc. 15]; [Doc. 25]. Moreover, it is apparent from the allegations of the Amended Complaint that Plaintiff has pleaded her "best case." *Ricks v. Khan*, 135 F.4th 296, 300 (5th Cir. 2025). Although Plaintiff attempts to elaborate on her allegations in response to Defendants' motions, her briefing cannot cure deficiencies in the operative pleading. Nor has Plaintiff requested leave to amend or otherwise argued that further amendment would cure those deficiencies. Under these circumstances, the Court concludes that Plaintiff cannot allege facts sufficient to state a plausible First Amendment retaliation claim. Accordingly, the Court declines to afford Plaintiff a third opportunity to amend, and dismissal of this claim is with prejudice.

### ii. Fourth Amendment Violations

The Court now turns to Plaintiff's Fourth Amendment claims. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. As the Supreme Court has recognized, the purpose of the Fourth Amendment is to safeguard an individual's privacy interest against arbitrary invasions by the government. *Carpenter v. United States*, 585 U.S. 296, 303, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018). While this case does not necessarily involve criminal conduct, "[i]t is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations," and can apply "when the Government acts in its capacity as an employer." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 755, 130 S. Ct. 2619, 177 L. Ed. 2d 685 (2010) (citation omitted).

24

The Court first addresses Plaintiff's allegation that Defendants "cited" her "erroneously and unlawfully for criminal violations and infractions, and looked into her private and privileged data, records, background, and history seeking information with which to criminalize her in violation of her protections under the Fourth Amendment[.]" [Doc. 22 at 5]. Regarding these alleged criminal violation citations, Plaintiff asserts that Defendant Grayson lodged the "unjustified and unwarranted criminal allegations against the Plaintiff resulting in her being placed under internal investigation at the department." *Id.* at 10. Plaintiff argues that Defendant Grayson's inquiry into her law enforcement certification status was "unauthorized and unlawful and an invasion of her privacy." *Id.* at 8. Plaintiff frames the allegations to support an unreasonable search and seizure claim. *Id.* at 12.

Defendant Grayson argues that Plaintiff fails to state a viable Fourth Amendment violation based on these allegations. Specifically, Grayson argues that Mississippi law mandates certification for all law enforcement officers, including Plaintiff, pursuant to Mississippi Code Section 45-6-11. Accordingly, Grayson asserts that Plaintiff cannot maintain a Fourth Amendment violation claim under an expectation of privacy theory. [Doc. 41 at 11-12]. Grayson also argues that Plaintiff fails to allege sufficient facts to support her claim that he levied unwarranted criminal allegations against her and fails to allege a search or seizure within the meaning of the Fourth Amendment. *Id.* Lastly, Defendant Grayson characterizes his inquiry into Plaintiff's certification status as an "internal workplace investigation" which does not implicate Fourth Amendment protections.

In response to Defendant Grayson's arguments that she fails to state a viable Fourth Amendment claim, Plaintiff offers four sentences of rebuttal argument, citing ***O'Connor v. Ortega***, 480 U.S. 709, 717, 107 S. Ct. 1492, 94 L. Ed. 2d 714 (1987) for the proposition that "[p]ublic

25

employees retain Fourth Amendment protections." [Doc. 53 at 5]. Plaintiff further argues that she plausibly alleges "searches into her records and personal information" because **Exhibit C** and **Exhibit D** to the [22] Amended Complaint "demonstrate that she possessed certification credentials." *Id.* In Plaintiff's view, "the existence of these documents, and the timing of the searches into [her] background, support [her] allegation that any investigations were unnecessary, pretextual, and targeted…implicat[ing] constitutional protections[.]" *Id.*

Plaintiff's allegations are insufficient to establish a reasonable expectation of privacy in her law enforcement certification records. Although Plaintiff argues that she retained Fourth Amendment protections as a public employee, public employees do not possess an unlimited expectation of privacy in information related to their employment. *O'Connor*, 480 U.S. at 717. Rather, the existence of a reasonable expectation of privacy depends on the "operational realities of the workplace" and "may be reduced by virtue of actual office practices and procedures or by legitimate regulation." *Id*. Here, the Amended Complaint acknowledges that Plaintiff served as a law enforcement officer, a position requiring valid certification under Mississippi law. Miss. Code Ann. § 45-6-11. Thus, Sheriff's departments in Mississippi must be able to ensure that their deputies' certifications are valid. Put differently, sheriff's departments necessarily have a legitimate interest in verifying that their officers satisfy statutory requirements before allowing them to continue exercising law enforcement authority. Plaintiff's assertion that this administrative check into her certification status was pretextual simply cannot state a viable Fourth Amendment claim. Pretextual or not, Plaintiff cannot allege sufficient facts to show that, based on the "operational realities of the workplace," she had a reasonable expectation of privacy in her certification records. *O'Connor*, 480 U.S. at 717. Furthermore, law enforcement certification information maintained through the Mississippi Department of Public Safety is publicly

26

accessible, and Plaintiff therefore cannot plausibly allege a reasonable expectation of privacy in the mere existence or validity of her certification status. *See **Katz v. United States***, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d. 576 (1967) (explaining that what a person knowingly exposes to the public is not a subject of Fourth Amendment protection).

Even assuming Plaintiff possessed some expectation of privacy in the records at issue, the inquiry would still be constitutional, as searches are "judged by the standard of reasonableness under all the circumstances." ***Id*.** at 725-26. Under the circumstances, it would be reasonable, if not mandatory as required by statute, for a sheriff's department supervisory officials to ensure deputies' certifications were valid and up to date. Plaintiff's allegations conflict with "the common-sense realization that government offices could not function if every employment decision became a constitutional matter." ***Connick***, 461 U.S. at 143. Accordingly, because Plaintiff fails to state a Fourth Amendment claim against Defendant Grayson based on the facts as alleged in the Amended Complaint, the claim must be dismissed.

Plaintiff's Fourth Amendment Claim against Defendant Williams likewise fails. In response to Defendant Williams's argument that she fails to allege he actively participated in the conduct complained of, Plaintiff argues that supervisory officials can be held liable when they are personally involved or act with deliberate indifference to actions leading to a deprivation of a constitutional right. [Doc. 64 at 14] (citing ***Porter***, 659 F.3d at 446).

Plaintiff does not allege that Defendant Williams was personally involved in the Fourth Amendment violations. Instead, she seeks to impose liability based on Defendant Williams role a supervisor. "Supervisory officials" such as Defendant Williams "are not liable under § 1983 for the actions of subordinates on any theory of vicarious liability." ***Turner v. Lieutenant Driver***, 848 F.3d 678, 695 (5th Cir. 2017) (citing ***Thompson v. Upshur Cnty.***, 245 F.3d 447, 459 (5th Cir.

27

2001)). "There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury." *Miller v. Taylor*, No. 1:25-cv-86-SA-DS, 2026 U.S. Dist. LEXIS 81285, at *13 (N.D. Miss. Apr. 13, 2026) (citing *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009)). This is because "a governmental official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

First, Plaintiff fails to identify an unconstitutional policy implemented by Defendant Williams that resulted in the Fourth Amendment violation. Moreover, "[i]n order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 440 (internal quotation marks omitted) (citation omitted) (emphasis in original).

Lastly, though the specific phrasing of "malicious prosecution" does not appear in the Amended Complaint, Plaintiff appears to assert a claim arising under such theory by alleging that she was wrongfully cited for criminal infractions without probable cause. To the extent Plaintiff seeks to bring a standalone § 1983 malicious prosecution claim, such a claim is not cognizable. *See, e.g., Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) ("[T]he initiation of criminal charges without probable cause may set in force events that run afoul of the Constitution, but the malicious prosecution tort itself is not a constitutional violation."). Rather, a plaintiff must identify a specific constitutional right that was violated in connection with the alleged malicious prosecution. *Id.* at 953. For example, the initiation of criminal charges without probable cause may implicate the Fourth Amendment if the accused is seized or arrested, or may implicate other constitutional protections if further proceeding infringe upon a protected right. *Id.* Here, however,

28

Plaintiff fails to allege sufficient facts demonstrating that Defendants violated a specific constitutional right in connection with the alleged criminal citations. Plaintiff does not identify the specific criminal violations for which she was cited, the circumstances surrounding the issuance of the citations, whether the citations resulting in a deprivation of liberty beyond the issuance of the citations themselves, or facts demonstrating that the Defendants lacked arguable probable cause. Moreover, Plaintiff fails to demonstrate how the criminal allegations were pursued, whether any criminal process was initiated, or how Defendants' specific actions resulted in a constitutional deprivation. Accordingly, Plaintiff's conclusory assertion that Defendants levied unwarranted criminal allegations against her, without more, is insufficient to state a claim under § 1983.

Because Plaintiff fails to allege sufficient facts demonstrating that Defendant Grayson conducted an unreasonable search or seizure, Plaintiff has not established an underlying constitutional violation. As explained above, Defendant Williams cannot be liable under a supervisory-liability theory for acting with deliberate indifference to constitutional violations if no violation occurred. Accordingly, Plaintiff's Fourth Amendment claims against Defendant Williams and Defendant Grayson are dismissed.

### iii. Fourteenth Amendment Violations

Plaintiff also asserts two Fourteenth Amendment violations. She alleges that she was deprived of her life, liberty, or property without the due process of law and the right to equal protection of the law.

#### a. Due Process

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall…deprive any person of life, liberty, or property, without the due process of law." U.S. Const. Amend. XIV, § 1. The Due Process Clause has both procedural and substantive implications. *Ricks*

29

*v. City of Winona*, 858 F. Supp. 2d 682, 690 (N.D. Miss. 2012). When conducting a due process analysis, the court must first ask "whether there exists a liberty or property interest of which a person has been deprived." *Blackledge v. City of Hattiesburg*, 809 F. Supp. 3d 443, 462 (S.D. Miss. 2025) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 291, S. Ct. 859, 178 L. Ed. 2d 732 (2011)); *see also Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017) ("The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty.").

"Procedural due process is not itself an independent right, but merely a condition precedent to the deprivation of a life, liberty, or property interest." *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1037 (5th Cir. 1982). Procedural due process issues are governed by a general two-part inquiry: first, whether a plaintiff had a property interest *of which he was deprived*; and second, if so, what process was due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S. Ct. 1148, 71 L. Ed. 2d. 265 (1982) (emphasis added). Moreover, "if an individual does not have a constitutionally protected property or liberty interest, he or she cannot be deprived of due process and thus cannot maintain a § 1983 action" under such a theory. *Klingler v. Univ. of S. Miss.*, 612 F. App'x 222, 227 (5th Cir. 2015) (citation omitted).

b. Property Interest in Public Employment

Plaintiff's alleged property interest concerns her right to continued employment with the HCSD, which was allegedly taken without due process.[21] First, state law controls the analysis of

---

[21] The Amended Complaint states: "Plaintiff was terminated repeatedly, denied promotional opportunities, placed and kept in subordinate positions not commensurate to her work, experience, and career, and passed over for promotional opportunities without being provided with the opportunity to apply, without being provided with official notice when terminated or passed over or denied a position, without following official protocols for consideration of a position or for termination from a position, and without being provided with any employment hearings or opportunities to appeal terminations or hiring decisions to any board or through any appeal process whatsoever, all in violation of Plaintiff's right to due process and equal protection guaranteed by the 14th Amendment to the U.S. Constitution." [Doc. 22 at 5]. The Amended Complaint also provides: "In committing the acts complained of herein, Defendants acted under color

30

whether Plaintiff had a property interest in her employment with HCSD to entitle her to certain procedural due process protections. *McDonald v. City of Corinth, Tex.,* 102 F.3d 152, 155 (5th Cir. 1996); *see also Muncy v. City of Dallas, Tex.*, 335 F.3d 394, 398 (5th Cir. 2003) ("[A] property interest is not incidental to public employment, instead it must be created by an independent source, such as state law.").

Under Mississippi law, "[e]very sheriff [has] the power to appoint one or more deputies to assist him in carrying out the duties of his office…[and] *to remove them at pleasure*[.]" Miss. Code Ann. § 19-25-19 (emphasis added). Because Mississippi law authorizes a sheriff to remove deputies "at pleasure," Plaintiff's employment was terminable at will. Moreover, "[u]nder Mississippi law, all employees are presumed to be at-will "unless an express or implied contract, state law, or local ordinance indicates otherwise." *Linville*, 2026 U.S. Dist. LEXIS 121390, at *6 (citation omitted). Plaintiff has not plausibly alleged facts indicating that she was anything other than an at-will employee. Put differently, Plaintiff's allegations are not accompanied by sufficient facts to overcome the presumption of at-will employment. She points to no contractual provision, rule, policy, or statute that creates a property interest in her continued employment with the HCSD. *See Bennet v. Mem'l Hosp. st Gulfport ex Rel. Nicaud*, 1:22-cv-270-TBM-RPM, 2023 U.S. Dist. LEXIS 133919, at *9 (S.D. Miss. Aug. 2, 2023) (A Plaintiff alleging no facts indicating he had a protected interest in continued employment, especially when viewed "against the backdrop of Mississippi's ridged presumption for at-will employment.").

"At will employees have no constitutionally protected property interest in employment." *Stark v. Univ. of S. Miss.*, 8 F. Supp. 3d 825, 839 (S.D. Miss. 2014) (citation omitted). Without a protected property interest, Plaintiff's due-process claim must fail. *See Johnson v. City of Shelby*,

---

of law to deprive the Plaintiff of certain right [*sic*] protected by the U.S. Constitution…, including….c) the right not to be deprived of life, liberty, or property without the due process of law." *Id.* at 11-12.

31

642 F. App'x 380, 382-386 (5th Cir. 2016) (finding that Mississippi law does not provide public employees a presumption against at-will employment and therefore a protected property interest in their employment). Accordingly, Plaintiff had no constitutionally protected property interest in her continued employment with the HCSD. For this reason, Plaintiff's Fourteenth Amendment Claims for violation of her Due Process rights against Defendant Williams and Defendant Grayson must be dismissed.

c.       Liberty Interest in Public Employment

The Amended Complaint, construed liberally, also asserts a deprivation of a liberty interest in connection with Plaintiff's employment with the HCSD. "Liberty interests come from two sources: (1) the Constitution itself; and (2) an exception or interest created by state law or policies." *Adams v. City of Harahan*, 95 F.4th 908, 913 (5th Cir. 2024) (citation omitted). The meaning of the term "liberty" is broad, *see **Bd. of Regents of State Colls. v. Roth***, 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), and a liberty interest arises where an employee is "discharged in a manner that creates a false and defamatory impression about [her] and thus stigmatizes [her] and forecloses [her] from other employment opportunities." ***Bledsoe v. City of Horn Lake***, 449 F.3d 650, 653 (5th Cir. 2006) (internal quotation marks and citation omitted).

The Fifth Circuit employs a seven-element "stigma-plus-infringement" test to "determine whether § 1983 affords a government employee a remedy for deprivation of liberty without notice or an opportunity to clear [her] name." *Id*. A § 1983 plaintiff must demonstrate that (1) she was discharged; (2) stigmatizing charges were made against her relating to the discharge; (3) such charges were false; (4) she was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) she requested a hearing to clear her name; and (7) the employer denied the request. *Id*.

The Amended Complaint fails to plausibly allege a liberty interest as it fails to allege facts to support most, if not all, of the seven elements above. Construing the Amended Complaint in Plaintiff's favor, the Court finds that it fails to plead a liberty interest in Plaintiff's employment. Plaintiff fails to allege sufficient facts that any stigmatizing charges were made against her relating to her discharge, the falsity of such charges, that such charges were made public, that she requested a hearing to clear her name, or that the HCSD denied that request. Consequently, the Amended Complaint fails to plausibly allege a deprivation of a liberty interest.

        d.      <u>Equal Protection</u>

Plaintiff also asserts an Equal Protection claim. The Amended Complaint is not sufficiently clear as to what theory of Equal Protection Plaintiff seeks relief under. For example, the Complaint asserts that "[i]n committing the actions complaint of…Defendants deprive[d]" Plaintiff of the "right to equal protection of the law." [Doc. 22 at 11-12]. The Court assumes that Plaintiff attempts to assert that Defendants discriminated against her on the basis of her age and sex in violation of the Equal Protection Clause of the Fourteenth Amendment.

The Fifth Circuit's inquiry into intentional discrimination in the employment setting is essentially the same for individual actions brought pursuant to 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment through 42 U.S.C. § 1983, and Title VII. The Equal Protection Clause of the Fourteenth Amendment prohibits states and municipalities from denying any person the equal protection of the laws, which is "essentially a direction that all persons similarly situated should be treated alike." ***Club Retro, LLC v. Hilton***, 658 F.3d 181, 212 (5th Cir. 2009) (quoting ***Qutb v. Strauss***, 11 F.3d 488, 492 (5th Cir. 1993)) (internal quotation marks omitted).

"To state a claim of sex discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege … that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Jackson v. Duff*, 161 F.4th 343, 347 (5th Cir. 2025) (quoting *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012)); *see also Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004). "Discriminatory intent can be shown in the same way under § 1983 as Title VII—by either direct or circumstantial evidence." *Id.* (quoting *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020)). The Fifth Circuit has held that "[a]llegations of discriminatory intent that are merely conclusory, without reference to specific facts, will not suffice." *Fennel v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (internal citation omitted).

To establish a prima facie case of discrimination at the pleading stage, Plaintiff must sufficiently plead that she (1) is a member of a protected class; (2) was qualified for the position; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside of the protected class or was treated less favorably than other similarly situated employees outside of the protected class. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). At the pleading stage, Plaintiff need not establish these elements conclusively, but her allegations must still contain sufficient factual matter to plausibly suggest intentional discrimination.

Plaintiff fails to sufficiently plead factual support for the second and fourth elements. There is no dispute that Plaintiff, a female, is a member of a protected class. *See Robertson v. Univ. of Miss. Med. Ctr.*, No. 3:18-cv-546-HSO-JCG, 2020 U.S. Dist. LEXIS 59694, at *18 (S.D. Miss. Mar. 23, 2020) (citation omitted). Plaintiff has also pled a series of adverse employment actions,

34

including that she was subject to different treatment than her male counterparts regarding "hiring, firing, ranking, promotions, demotions and pay." [Doc. 22 at 14]. *See **Smith v. Porter***, 629 F. Supp. 2d 644, 651 (S.D. Miss. 2009) (Adverse employment actions include "hiring, granting leave, discharging, promotion, or compensating."). However, she fails to plausibly allege and establish that she was qualified for the position and was replaced by someone outside of the class or was treated less favorably than other similarly situated employees.

First, Plaintiff's own exhibits demonstrate that she was not qualified for the position at least during some periods of time of the complained-of conduct. Namely, exhibits attached to the Amended Complaint establish that Plaintiff lacked the required certification to serve as a full-time law enforcement officer before January 13, 2025. Thus, to the extent Plaintiff challenges employment decisions before that time, she cannot plausibly allege that she was qualified for the position at the time of those challenged decisions.

Even assuming Plaintiff has adequately stated that she was qualified for the position, she never sufficiently asserts that she was replaced with someone outside of her protected class. While the Amended Complaint does provide that "Defendants subjected the Plaintiff, who is a woman, to different treatment than her male counterparts when makings decision [*sic*] about hiring, firing, ranking, promotions, [and] demotions," [Doc. 22 at 14], "[a]llegations of discriminatory intent that are merely conclusory, without reference to specific facts, [does] not suffice" to plausibly state an Equal Protection violation. ***Fennel,*** 804 F.3d at 412 (internal citation omitted). Plaintiff does not provide the Court with reference to such specific facts, including: who she was replaced with, whether that person was outside of the protected class, or on which termination occasion (if any) she was replaced by someone who is outside of the protected class. Accordingly, Plaintiff's claim can only proceed on the "treated less favorably" theory.

35

Regarding differential treatment, Plaintiff offers only one specific, non-conclusory example of how she was treated differently from other employees. The Amended Complaint alleges that Defendant Grayson orchestrated "the taking of her assigned vehicle and [left] her with no vehicle or downgraded vehicle usage in comparison to the other subordinate male officers[.]" [Doc. 22 at 7]. Plaintiff does not allege facts showing that the male officers who received better vehicle assignments were similarly situated in all relevant aspects, such as rank, assignment, tenure, certification status, or disciplinary history. *See **Lindquist v. City of Pasadena***, 669 F.3d 225, 233-234 (5th Cir. 2012) ("[I]n order to be similarly situated, comparators must be *prima facie* identical in all relevant aspects.") (collecting cases).[22] Nor does Plaintiff allege facts indicating that Defendant Grayson's decision was made because Plaintiff was female rather than some other related purpose. In fact, Plaintiff offers no support for how Defendant Grayson orchestrated the taking of her vehicle. Moreover, while Plaintiff repeatedly alleges that she was treated differently than her male counterparts, she does not identify a single comparator, explain how that comparator was similarly situated, or allege facts showing that Defendants' decisions were motived by gender-based animus.

As for Defendant Williams, Title VII and § 1983 analyses are alike in many ways. One key distinction is that § 1983 applies to individuals and Title VII does not; thus, a plaintiff seeking relief pursuant to § 1983 must plausibly allege individual causation against a defendant in their individual capacity. *See **Jackson***, 161 F.4th at 348. This is because in § 1983 action, "a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." ***Iqbal***, 556 U.S. at 676. "Thus, while the prima facie

---

[22] *See also **Wheeler v. BL Dev. Corp.***, 415 F.3d 399, 405 (5th Cir. 2005) (The Fifth Circuit defines similarly situated narrowly. Similarly situated individuals must be "nearly identical" in all aspects and "must fall outside the plaintiff's protected class.").

elements of a Title VII claim may establish an *employer's* liability for intentional discrimination, a § 1983 plaintiff must additionally plead and prove which actions of the *individual defendant* caused the harm." ***Jackson***, 161 F.4th at 348 (citation omitted) (emphasis in original).

Plaintiff does not plausibly allege that Defendant Williams personally participated in any discriminatory employment decision. Instead, Plaintiff appears to rely solely on supervisor liability. However supervisory liability under § 1983 cannot attach absent an underlying constitutional violation by the subordinate employee. This is because "to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." ***Porter***, 659 F.3d at 440 (internal quotation marks omitted) (citation omitted). As explained above, Plaintiff has failed to plausibly allege that Defendant Grayson's conduct constituted intentional sex discrimination. Put differently, Defendant Grayson did not violate Plaintiff's constitutional rights; thus, Defendant Williams could not have been deliberately indifferent to a constitutional violation if no violation occurred. For this reason, Plaintiff fails to state a valid Equal Protection claim against Defendant Williams.

### iv. Failure to Train / Supervise Theory

Lastly, the Amended Complaint asserts a failure to train and/or supervise theory under 42 U.S.C. § 1983. The Amended Complaint states that the "failure of all Defendants to adequately train and supervise their enployees [*sic*], agents, security or law enforcement personnel amounted to deliberate indifference to the rights of the Plaintiff under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and under Federal law through Title VII and the ADEA." [Doc. 22 at 13].

To succeed on a failure to train or supervise claim, a plaintiff must show: (1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. ***Estate of Davis ex rel. McCully v. City of N. Richland Hills***, 406 F.3d 375, 381 (5th Cir. 2005). As explained herein, Plaintiff has failed to plausibly allege an underlying violation of her constitutional rights under Fourth or Fourteenth Amendment. Because a failure to train or supervise claim is derivative in nature and cannot exist absent an underlying constitutional violation by a subordinate actor, Plaintiff's claim necessarily fails. Accordingly, Plaintiff's failure to train and/or supervise claim is dismissed.

## IV.     Conclusion

For the reasons stated herein, the Court finds that Plaintiff has failed to allege sufficient facts to state a plausible claim for relief under 42 U.S.C. § 1983 for violations of her First, Fourth, and Fourteenth Amendment rights, Title VII, or the ADEA against the HCSD, Defendant Williams, and Defendant Grayson. Accordingly, Defendant Williams and Defendant Grayson are entitled to qualified immunity and claims against them are dismissed. All claims against the HCSD are also dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendant Grayson's [40] Motion for Judgment on the Pleadings and Defendant Williams and the Humphreys County Sheriff's Department's [47] Motion for Judgment on the Pleadings is hereby **GRANTED**. Accordingly, all claims asserted these Defendants are hereby **DISMISSED WITH PREJUDICE**. A separate and accompanying Order shall issue.

THIS, the 13th day of July, 2026.

UNITED STATES DISTRICT JUDGE