**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**SHIRLEY JOHNSON** **PLAINTIFF**

**v.** **Civil Action No. 4:25-cv-205-RPC-JMV**

**HUMPHREYS COUNTY SHERIFF'S DEPARTMENT, et al.** **DEFENDANTS**

**MEMORANDUM OPINION**

Before the Court is Defendant Mickey Foxworth's ("Defendant Foxworth") [86] Motion for Judgment on the Pleadings and Defendant Humphreys County, Mississippi's ("the County") [89] Motion to Dismiss. Plaintiff alleges that Defendant Foxworth and the County violated her First, Fourth, and Fourteenth Amendment rights when she was fired on numerous occasions. Plaintiff also brings claims for sex and age discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and the Age Discrimination in Employment Act of 1967 ("ADEA").[2]

On June 13, 2026, this Court granted Defendant Truron Grayson's [40] Motion for Judgment on the Pleadings, the Humphreys County Board of Supervisors' ("HCBOS") [71] Motion to Dismiss, and Bruce Williams and the Humphreys County Sheriff's Department ("HCSD") [47] Motion for Judgment on the Pleadings. *See* [Doc. 79, 80, 81]. The facts set forth in this Court's previously issued memorandum opinion are hereby incorporated by reference, and the Court only addresses the facts and claims as alleged against Defendant Foxworth and the County. *See* [Doc. 80]; *see also* ***Johnson v. Humphreys Cnty. Sheriff's Dept.***, 4:25-cv-205-RPC-JMV, 2026 U.S. Dist. LEXIS 154104, at *4-10 (N.D. Miss. July 13, 2026).

---

[1] 42 U.S.C. §§ 2000e to 2000e-17.

[2] 29 U.S.C. §§ 621-634.

In sum, Plaintiff is a former employee of the HCSD, where Defendant Foxworth served as interim sheriff. Plaintiff alleges that she was fired from her position(s) within the sheriff's department on numerous occasions, including while Defendant Foxworth was in charge, and that her terminations were in violation of her First, Fourth, and Fourteenth Amendment rights. Plaintiff also alleges that she was fired because of her age, because she is a female, and in retaliation for prior Equal Employment Opportunity Commission ("EEOC") charges she filed against Foxworth and the Belzoni Police Department in 2004.

Defendant Foxworth's [85] Motion for Judgment on the Pleadings argues that the Title VII and ADEA claims against him fail as a matter of law; that the official capacity claims are redundant as those against the County and should be dismissed; and that he is entitled to qualified immunity for the 42 U.S.C. § 1983 claims because Plaintiff has failed to allege any personal involvement by him to support a viable constitutional violation claim. The County's [89] Motion to Dismiss argues that Plaintiff's constitutional claims, including the failure to train and supervise claim, should be dismissed for failure to plausibly allege underlying First, Fourth, Fourteenth Amendment violations. The County also argues that Plaintiff's Title VII and ADEA claims should be dismissed for failure to state a claim.

***Standard of Review***

"The standard governing dismissal for failure to state a claim under Rule 12(b)(6) is the same as that for dismissal under Rule 12(c)." ***Williams v. Bracey***, No. 4:25-cv-89-RPC-JMV, 2026 U.S. Dist. LEXIS 104572, at *10 (N.D. Miss. May 12, 2026). Under Rule 12(c), the Court is "generally limited to the contents of the pleadings, including attachments thereto." ***Miller v. Thigpen***, No. 2:24-cv-97-HSO-BWR, 2025 U.S. Dist. LEXIS 96746, *7 (S.D. Miss. May 21, 2025). Such motions are "designed to dispose of cases where the material facts are not in dispute

and a judgment on the merits can be rendered by looking to the substance of the pleadings[.]" ***Id.*** Courts may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." ***Dorsey v. Portfolio Equities, Inc.***, 540 F.3d 333, 338 (5th Cir. 2008).

To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim upon which relief can be granted.'" ***In re Great Lakes Dredge & Dock Co. LLC***, 624 F.3d 201, 210 (5th Cir. 2010) (quoting ***Ashcroft v. Iqbal***, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. ***Shakeri v. ADT Sec. Servs., Inc.***, 816 F.3d 283, 290 (5th Cir. 2016); *see also* ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." ***Iqbal***, 556 U.S. at 678. While a complaint does not need detailed factual contentions, the "allegations must be enough to raise a right to relief above the speculative level." ***Twombly***, 550 U.S. at 555. Accordingly, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." ***Turner v. Lieutenant Driver***, 848 F.3d 678, 685 (5th Cir. 2017) (quotation omitted). "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead facts which, if proved, would defeat the claim of immunity." ***Murry v. City of Indianola***, 2024 U.S. Dist. LEXIS 186614, at *16-17 (N.D. Miss. July 19, 2024) (quoting ***Guerra v. Castillo***, 82 F.4th 278, 285 (5th Cir. 2003)); *see also* ***Waller v. Hanlon***, 922 F.3d 590, 599 (5th Cir. 2019).

## ***Analysis***

### I. Claims Against Defendant Foxworth

First, Plaintiff concedes that the official capacity claims against Defendant Foxworth should be dismissed.[3] Plaintiff also concedes that the failure to train or supervise claim against Defendant Foxworth should be dismissed.[4] Those claims are therefore dismissed with prejudice.

The allegations concerning Defendant Foxworth in the Amended Complaint are as follows: (1) Plaintiff filed a prior EEOC claim based on age and gender discrimination against him and the Belzoni Police Department when Foxworth was the Chief of Police in or around 2004; (2) Foxworth was later hired by the Humphreys County Board of Supervisors; and (3) once appointed to the interim sheriff's position, Foxworth's "first official act" was to fire Plaintiff based on Plaintiff's prior 2004 EEOC charges. [Doc. 22 at 6, 11].

Under the qualified immunity analysis, the Court must decide (1) whether the facts as alleged have made out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. ***Johnson***, 2026 U.S. Dist. LEXIS 154104, at *16 (quoting ***Triplett v. Swindle***, No. 1:24-cv-201-GHD-RP, 2026 U.S. Dist. LEXIS 6505, at *5 (N.D. Miss. Jan. 12, 2026)). The Court will first determine "whether the facts alleged" against Defendant Foxworth "taken as true…make out a violation of a constitutional right," because "a plaintiff's inability to establish an underlying constitutional violation forecloses any chance of recovery

[3] "First, Plaintiff acknowledges that claims against a government official in his official capacity are generally treated as claims against the governmental entity itself. *See* ***Kentucky v. Graham***, 473 U.S. 159, 165-66 (1985); ***Monell v. Department of Social Services***, 436 U.S. 658, 690 n.55 (1978). Because Humphreys County remains a named defendant in this action, Plaintiff does not oppose dismissal of the official-capacity claims against Defendant Foxworth as duplicative of the claims asserted against the County. *See* ***Sanders-Burns v. City of Plano***, 594 F.3d 366, 373 (5th Cir. 2010) (recognizing that official-capacity claims are redundant where the governmental entity is already named as a defendant)." [Doc. 92 at 19].

[4] "Second, Plaintiff does not oppose dismissal of any claim against Defendant Foxworth premised solely upon a failure to train or supervise theory. A supervisory official may not be held liable under § 1983 solely because of the actions of a subordinate employee or merely because of the supervisory relationship. Rather, supervisory liability requires either personal participation in the constitutional violation or implementation of a policy or practice that causes the constitutional injury. *See* ***Porter***, 659 F.3d at 446; ***Iqbal***, 556 U.S. at 676." [Doc. 92 at 19].

against" Defendant Foxworth. ***Id***. (quoting ***Thomas v. Bolivar Cnty***., 4:26-cv-3-RPC-JMV, 2026 U.S. Dist. LEXIS 102369, at *6 (N.D. Miss. May 8, 2026)).

A. Title VII and the ADEA

First, Defendant Foxworth cannot be held individually liable for violations of Title VII and the ADEA. *See* ***Johnson***, 2026 U.S. Dist. LEXIS 154104, at *13-14 (holding that individuals cannot be held liable for Plaintiff's Title VII claims or the ADEA claim) (collecting cases).[5] Accordingly, Plaintiff's Title VII and ADEA claims against Defendant Foxworth are dismissed with prejudice.

B. First Amendment

Plaintiff's First Amendment claim alleges that Defendant Foxworth terminated her employment in retaliation for the EEOC charges she previously filed against him and the Belzoni Police Department in 2004.[6] A public employee asserting a First Amendment retaliation claim must plausibly allege and establish: "(1) [she] suffered an adverse employment action; (2) [she] spoke as a citizen on a matter of public concern; (3) [her] interest in the speech outweigh[ed] the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." ***Linville v. City of Biloxi***, No. 1:25-cv-328-HSO-BWR, 2026 U.S. Dist. LEXIS 121390, at *4 (S.D. Miss. June 2, 2026) (citing ***Johnson v. Miller***, 126 F.4th 1020, 1029 (5th Cir. 2025)).

---

[5] Plaintiff also abandoned these claims because she failed to respond to Defendant Foxworth's arguments in support of his motion for judgment on the pleadings. *See* ***Thomas***, 2026 U.S. Dist. LEXIS 102369, at *7 (quoting ***McClelland v. Katy Indep. Sch. Dist***, 63 F.4th 996, 1010 (5th Cir. 2023) ("[A] party abandons a claim by failing to defend it in response to a motion [for judgment on the pleadings].").

[6] "Plaintiff alleges that Defendant Foxworth previously served as Chief of Police for the Belzoni Police Department, that Plaintiff worked under his supervision during that period, that Plaintiff previously engaged in protected activity involving Defendant Foxworth, that Defendants— including Foxworth—were aware of Plaintiff's prior protected activity, and that Foxworth terminated Plaintiff as one of his first official acts after assuming the position of Interim Sheriff of Humphreys County." [Doc. 92 at 2].

Plaintiff alleges that Defendant Foxworth fired her because she previously filed EEOC charges against him and the Belzoni Police Department in 2004. "However, an EEOC charge is not a matter of public concern." ***Meadows v. City of Crowley***, 4:17-CV-099-A, 2017 U.S. Dist. LEXIS 89316, at *5 (N.D. Tex. June 9, 2017) (citing ***Cutrer v. McMillan***, 308 F. App'x 819, 821 (5th Cir. 2009); ***Ayoub v. Texas A&M Univ.***, 927 F.2d 834, 837-38 (5th Cir. 1991); ***Hudson v. Leak Cnty. Sch. Dist.***, 3:08-cv-90-DPJ-JCS, 2009 U.S. Dist. LEXIS 39925, at *16 (S.D. Miss. Apr. 21, 2009). Instead, when a public employee lodges a complaint with the EEOC but does not further air out such grievances in a way that implicates the public, EEOC charges implicate only the private employment interests of a plaintiff. ***Cutrer***, 308 F. App'x at 821 (citing ***Short v. City of West Point, Miss.***, 125 F.3d 853 (5th Cir. 1997)).

Plaintiff's Amended Complaint fails to sufficiently allege that she took any action to publicly air either the complaints underlying her 2004 EEOC charges or any subsequent claims against Foxworth after he became employed by the HCSD or HCBOS. ***Ayoub***, 927 F.2d at 837 (finding that the plaintiff "never attempted to air" the complaints at the heart of his EEOC charge "in a manner that would call the public's attention to the alleged wrong"). Thus, while it is true that discrimination can be a matter of public concern, "in the context in which it was presented in this case…it was purely personal and a private matter." ***Id.*** at 838. Because Plaintiff has failed to demonstrate that her prior EEOC charges against Defendant Foxworth and the Belzoni Police Department constitute a matter of public concern, the First Amendment claim fails and is dismissed with prejudice. *See* ***Click v. Copeland***, 970 F.2d 106, 111 (5th Cir. 1992) ("If the conduct does not touch a matter of public concern, the inquiry is at an end[.]").

C. Fourth Amendment

Plaintiff's Amended Complaint describes her Fourth Amendment claim as follows:

> Plaintiff's fellow officers cited the Plaintiff erroneously and unlawfully for criminal violations and infractions, and looked into her private and privileged data, records, background and history seeking information with which to criminalize her in violation of her protections under the Fourth Amendment, without probable cause, warrant or permission. Plaintiff was terminated repeatedly, denied promotional opportunities, placed and kept in a [*sic*] subordinate positions not commensurate to her work, experience and career, and passed over for promotional opportunities without being provided with the opportunity to apply, without being provided with official notice when terminated or passed over or denied a position, without following the official protocols for consideration of a position or for termination from a position, and without being provided with any employment hearings or opportunities to appeal terminations or hiring decisions to any board or through any appeal process whatsoever, all in violation of Plaintiff's right to due process and equal protection guaranteed by the 14th Amendment to the U.S. Constitution.

[Doc. 22 at 5].

First, Plaintiff's [91] response fails to respond to Defendant Foxworth's arguments that he is not liable for the Fourth Amendment claim, so the claim can be deemed abandoned and dismissed on this ground alone. ***Thomas***, 2026 U.S. Dist. LEXIS 102369, at *7 (*quoting* ***McClelland***, 63 F.4th at 1010 ("[A] party abandons a claim by failing to defend it in response to a motion to dismiss."). The allegations in the Amended Complaint also contain no specific action taken by Defendant Foxworth resulting in the alleged Fourth Amendment violation.[7] In fact, while the Amended Complaint groups the "defendants" together in collectively taking such actions, it later alleges that only Defendant Truron Grayson was behind this alleged scheme to cite Plaintiff erroneously for criminal infractions. *See* [Doc. 22 at 10, ¶ 31-32] ("*Grayson's* next action was [*sic*] lodge unjustified and unwarranted criminal allegations against the Plaintiff resulting in her being placed under internal investigation at the department. The investigation turned up nothing to justify the criminal allegations *made by Grayson*[.]") (emphasis added). Indeed, "a plaintiff must plead

[7] As noted in the Court's previous memorandum opinion: "Plaintiff's allegations almost never tie or link an individual defendant's specific conduct to a specifically pled constitutional violation. The lack of specificity is especially problematic in 42 U.S.C. § 1983 claims because the Court must be able to evaluate the individual defendant's own actions under the qualified immunity analysis[.]" [Doc. 80 at 12, n.6].

that each [g]overnment-official defendant, *through the official's own individual actions*, has violated the Constitution." ***Iqbal***, 556 U.S. at 676 (emphasis added). The allegations as specifically alleged against Defendant Foxworth are insufficient to support a Fourth Amendment claim, and the claim is dismissed with prejudice.

D. Fourteenth Amendment

Plaintiff also asserts two claims under the Fourteenth Amendment, alleging that she was deprived of her life, liberty, or property without due process of law and denied equal protection of the law. Defendant Foxworth argues that Plaintiff had no protected property interest in her continued employment with the HCSD because she was an at-will employee when Foxworth terminated her employment. Plaintiff does not dispute that she was an at-will employee. Instead, she argues that she "has alleged sufficient facts to proceed beyond the pleading stage" and that "[a] public employee may possess a liberty interest when the government, in connection with termination, makes charges that are sufficiently stigmatizing and that negatively affect the employee's reputation and future employment opportunities." [Doc. 92 at 15].[8]

"The stigma-plus doctrine recognizes the liberty interest that an individual has in his good name and reputation." ***Babinski v. Sosnowsky***, 79 F.4th 515, 519 n.3 (5th Cir. 2023). To state a stigma-plus claim, Plaintiff must allege that:

> (1)[s]he was discharged; (2) stigmatizing charges were made against [her] in connection with the discharge; (3) the charges were false; (4) [s]he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) [s]he requested a hearing to clear [her] name; and (7) the [County] denied the request.

***Rayborn v. Bossier Par. Sch. Bd.***, 881 F.3d 409, 419 (5th Cir. 2018) (citing ***Bledsoe v. City of Horn Lake***, 449 F.3d 650, 653 (5th Cir. 2006)).

[8] *citing* ***Bd. of Regents v. Roth***, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); ***Paul v. Davis***, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).

First, Plaintiff's Fourteenth Amendment claim against Foxworth must be dismissed because "[a] deprivation of liberty claims lies against the government employer, not a government employee." ***Fisher v. City of Freeport***, No. 3:26-cv-00072, 2026 U.S. Dist. LEXIS 176478, at *10 (S.D. Tex. Aug. 7, 2026) (quoting ***Sims v. City of Madisonville***, 894 F.3d 632, 642 (5th Cir. 2018)). Plaintiff has also failed to meet the elements of the stigma-plus test as outlined above. While the Amended Complaint alleges that some form of charges or allegations were made against Plaintiff, it fails to plausibly allege that those charges were publicly disclosed, that Plaintiff actually requested a name-clearing hearing, or that the County denied such a request. Accordingly, Plaintiff's Fourteenth Amendment claim based on a deprivation of a liberty interest is dismissed with prejudice.

Plaintiff's Fourteenth Amendment Equal Protection claim likewise fails. "To state a claim of sex discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege … that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" ***Jackson v. Duff***, 161 F.4th 343, 347 (5th Cir. 2025) (quoting ***Bowlby v. City of Aberdeen***, 681 F.3d 215, 227 (5th Cir. 2012)); *see also* ***Priester v. Lowndes Cnty.***, 354 F.3d 414, 424 (5th Cir. 2004). To establish a prima facie case of discrimination at the pleading stage, Plaintiff must sufficiently plead that she (1) is a member of a protected class; (2) was qualified for the position; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside of the protected class or was treated less favorably than other similarly situated employees outside of the protected class. ***Chhim v. Univ. of Tex. at Austin***, 836 F.3d 467, 470 (5th Cir. 2016); *see also* ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Although Plaintiff does not need to submit evidence to establish a *prima facie* case of

discrimination at this stage, she still "must plead sufficient facts on all the ultimate elements" of the claim. ***Cicalese v. Univ. of Tex. Med. Branch.***, 924 F.3d 762, 766 (5th Cir. 2019) (quoting ***Chhim***, 836 F.3d at 470).

Plaintiff fails to satisfy the fourth element with respect to her allegations against Defendant Foxworth. The pertinent allegation concerning Foxworth is that he terminated Plaintiff as his first official act after assuming the position of interim sheriff. Thus, to proceed beyond the pleading stage on her sex-based Equal Protection claim, Plaintiff needed to plausibly allege that she was replaced by a male employee. The Amended Complaint, however, fails to identify Plaintiff's replacement or otherwise allege that she was replaced by a male.[9] Accordingly, Plaintiff's Fourteenth Amendment Equal Protection claim against Defendant Foxworth is dismissed with prejudice.

## II. Claims Against the County

### A. ADEA and Title VII

The Court first acknowledges that, as a prerequisite to bringing a claim under Title VII or the ADEA, a plaintiff generally must exhaust her administrative remedies, including filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act. *See* ***Kelley v. Target Corp.***, 2026 U.S. Dist. LEXIS 165928, at *16 (N.D. Miss. July 27, 2026); *see also* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A).[10] The administrative exhaustion requirement is

[9] Even if Plaintiff wanted to proceed under the "treated differently" portion of the Equal Protection analysis, the claim would still fail. The Amended Complaint fails to allege how Defendant Foxworth himself treated Plaintiff differently from a "similarly situated" male coworker "under nearly identical circumstances." ***Alkhawaldeh v. Dow Chem. Co.***, 851 F.3d 422, 426 (5th Cir. 2017).

[10] *see also* ***Jamison v. Journey's***, No. 4:14-cv-170-SA-JMV, 2015 U.S. Dist. LEXIS 173709, at *17 (N.D. Miss. Nov. 13, 2015); ***Poston v. Wood***, No. 4:24-cv-117-DMB-JMV, 2026 U.S. Dist. LEXIS 67442, at *9 (N.D. Miss. Mar. 30, 2026) (quoting ***Ernst v. Methodist Hosp. Sys.***, 1 F.4th 333, 337 (5th Cir. 2021); ***Rush v. Thompson***, No. 3:25-cv-6-TSL-ASH, 2025 U.S. Dist. LEXIS 167589, at *6 (S.D. Miss. Aug. 28, 2025); ***Leech v. Miss. Coll.***, No. 3:21-cv-647-KHJ-FKB, 2023 U.S. Dist. LEXIS 7449, at *8 (S.D. Miss. Jan. 17, 2023).

an affirmative defense and does not implicate the Court's subject-matter jurisdiction. [11] Although the County pleaded failure to properly exhaust administrative remedies as an affirmative defense in its [33] Answer,[12] it does not assert that defense in its pending Rule 12(b)(6) motion. Because the County does not assert failure to exhaust administrative remedies as a defense in its motion, the Court declines to raise the issue *sua sponte*. *See* ***Davis v. Fort Bend Cnty.***, 893 F.3d 300, 307 (5th Cir. 2018); *see also* ***Hamilton v. Promise Healthcare***, 2023 U.S. App. LEXIS 27106, at *7 (5th Cir. Oct. 12, 2023) ("The party asserting exhaustion as an affirmative defense bears the burden in demonstrating non-exhaustion.").[13] However, the Court recognizes that judicial review of claims brought under the ADEA and Title VII is generally limited to "the scope of the [EEOC] charge itself" and the "investigation which can reasonably be expected to grow out of the charge[.]" ***Gibbons v. Brookside Props.***, 2024 U.S. Dist. LEXIS 141818, at *15-18 (S.D. Miss. Aug. 9, 2024) (analyzing the plaintiff's facts as alleged in the EEOC charge); *see also* ***McClain v. Lufkin Indus., Inc.***, 519 F.3d 264, 273 (5th Cir. 2008) ("Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."). Because no recent EEOC charge alleging discriminatory conduct by HCSD employees against Plaintiff is properly before the Court, the Court does not consider the contents of any such charge in resolving the County's motion.

---

[11] "The EEOC filing requirement functions as a statute of limitations rather than a jurisdictional prerequisite. It is a pre-condition to filing suit in district court, but it is not related to the subject matter jurisdiction of the court." ***Ray-Sampson v. Uplift Educ.***, No. 3:24-cv-2967, 2026 U.S. Dist. LEXIS 64695, at *9 (N.D. Tex. Feb. 3, 2026) (citation omitted).

[12] The County's Answer and Affirmative Defenses does state: "Insofar as any alleged cause of action for race, age, gender, or sex discrimination, or any portion thereof, was not contained in the charge of discrimination filed with the Equal Employment Opportunity Commission within the time prescribed by 42 U.S.C. §2000e-5(e), which statute is plead as a defense and as a statute of limitations, the Complaint should be dismissed." [Doc. 33 at 2].

[13] ***See also Luebano v. Off. Depot, L.L.C.***, No. 22-50767, 2023 WL 4249268 at *3 (5th Cir. June 29, 2023) ("Failure to exhaust is an affirmative defense that a defendant must raise.").

Accordingly, the Court considers the allegations contained in the Amended Complaint to determine whether Plaintiff has plausibly stated claims for relief under Title VII or the ADEA.[14]

i. Title VII – Gender Discrimination

The County argues that gender discrimination under Title VII requires establishing the same facts as a claim under the Equal Protection Clause of the Fourteenth Amendment, [Doc. 90 at 9], meaning that Plaintiff is required to plead: "(1) [s]he is a member of a protected class; (2) [s]he was qualified and applied for the job; (3) the employer rejected [her] for the job despite [her] qualifications; and (4) a similarly situated applicant outside the protected class was hired." *Id.* (citing ***Jackson***, 161 F.4th at 347). In response, Plaintiff argues that she does not have to plead facts establishing a *prima facie* case of discrimination at the pleading stage for her claim to survive, but still must plead sufficient facts on the ultimate elements of the claim to make it plausible. [Doc. 94 at 5].

The Court agrees with Plaintiff's argument that although she need not submit evidence to establish a prima facie case of Title VII discrimination at this stage, she still "must plead sufficient facts on all the ultimate elements" of the claim. ***Cicalese v. Univ. of Tex. Med. Branch.***, 924 F.3d 762, 766 (5th Cir. 2019) (quoting ***Chhim***, 836 F.3d at 470). Plaintiff also argues that the only "ultimate elements" she must allege at this stage are "whether the plaintiff suffered an adverse employment action because of the protected characteristic." [Doc. 94 at 5] (citing ***Cicalese***, 924 F.3d at 767).

---

[14] The Court acknowledges that, on April 17, 2026, Defendants HCSD and Bruce Williams filed a Motion for Judgment on the Pleadings and attached an EEOC charge purportedly filed by Plaintiff on September 26, 2025, along with a corresponding Right to Sue Letter. [Doc. 47, Exs. 1–2]. Plaintiff, however, makes no mention of these documents in her Amended Complaint or in her responses to the pending motions, nor does she assert that such charges were ever filed. Because these documents are not incorporated into the Amended Complaint and their contents are not properly before the Court at this stage, the Court declines to consider them in resolving the pending motions.

"At the 12(b)(6) stage, [the Court's] analysis of the Title VII claim is governed by ***Swierkiewicz v. Sorema N.A.***, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) – and not the evidentiary standard set forth in ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." ***Olivarez v. T-Mobile USA, Inc.***, 997 F.3d 595, 600 (5th Cir. 2021). However, Plaintiff is still required to "*plead sufficient facts* on all of the ultimate elements of a disparate treatment claim to make [her] case plausible." ***Cicalese***, 924 F.3d at 766. These "ultimate elements" include (1) an adverse employment action (2) "taken against a plaintiff *because of her protected status*." ***Id***. at 767 (emphasis in original). A plaintiff may also prove discriminatory termination, or that she was fired "because of her protected status," through either direct or circumstantial evidence. ***Id***. at 766 (citing ***Portis v. First Nat'l Bank of New Albany, Miss.***, 34 F.3d 325, 328 (5th Cir. 1994)). However, "when a plaintiff builds a case on circumstantial evidence, a court analyzes the plaintiff's claim under the ***McDonnell Douglas*** framework." ***Id***. at 767 (citation omitted). "In such cases, [the Fifth Circuit] [has] said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." ***Id***. (citation omitted). Plaintiff can "establish these elements [if] the facts *alleged in [the] complaint*[]" nudge her "claims across the line from conceivable to plausible." ***Keplar v. Google, LLC***, No. 3:22-cv-2281-b, 2023 U.S. Dist. LEXIS 199587, at *8 (N.D. Tex. Nov. 7, 2023) (citing ***Cicalese***, 924 F.3d at 767). Thus, the relevant inquiry is whether Plaintiff has alleged sufficient facts to plausibly suggest that she was terminated from her position as captain from the HCSD *because she is a female*. In assessing the sufficiency of Plaintiff's allegations, the Court is guided by and references the ***McDonnell Douglas*** framework.

For example, in ***Cicalese***, the Fifth Circuit held that the plaintiffs pled sufficient facts to survive a 12(b)(6) motion to dismiss. 924 F.3d at 766-68. The plaintiffs were Italian professors who alleged that their supervisors made several specific derogatory comments regarding Italians that precipitated adverse employment actions against them. ***Id***. at 764-65.[15] The Court held that the plaintiffs alleged sufficient facts, taken as true, to make the claim that the adverse employment actions "were motivated by anti-Italian bias" plausible but acknowledged that it was "a close call." ***Id***. at 768.

Following are the facts as alleged in the Amended Complaint pertinent to the analysis of whether Plaintiff has alleged sufficient facts for the Court to draw the inference that she was *fired* from the HCSD *because she is a woman*: (1) Defendant Grayson orchestrated the taking of her assigned vehicle and left her with no vehicle or downgraded usage in comparison to the other subordinate male officers; (2) Defendant Grayson made "sexist" comments towards Plaintiff once he was hired by the HCBOS to serve as law enforcement personnel for the court house; and (3) even though Defendant Williams identified Plaintiff as his interim replacement for the sheriff's position, she was passed over for the position by the HCBOS "in order to harass and put her in her place as a woman[.]" [Doc. 22 at 7, 10-11]. For the reasons outlined below, the Court views these allegations as conclusory and finds that Plaintiff has failed to "allege sufficient facts to 'nudge [her Title VII gender] claim across the line from conceivable to plausible.'" ***Cicalese***, 924 F.3d at 768 (citing ***Twombly***, 550 U.S. at 547). The allegations above fail to plausibly connect sex-based animus to a decisionmaker or decision that resulted in Plaintiff's termination from the HCSD.

---

[15] Plaintiff alleged an individual defendant stated: "What are you doing here? You should go back to Italy." ***Id***. at 764. Another individual said that he did not care about "these Italians." ***Id***. at 765. That same individual referred to "stupidity" and failure to "understand a situation" as an "Italian thing." ***Id***.

First, the vehicle assignment allegation fails to plausibly support an inference that Plaintiff was *terminated* from her position as captain because of her sex. Plaintiff alleges no set of facts that plausibly connect the alleged disparity in vehicle assignments to any of her subsequent terminations. Even accepting this allegation as true, it does not plausibly suggest that Plaintiff was fired from her position as captain with the HCSD because she is a woman.

Additionally, Plaintiff alleges that Defendant Grayson made "sexist" comments toward her. [Doc. 22 at 10]. While discriminatory remarks may, in some circumstances, support an inference that an adverse employment action was motivated by discriminatory animus, ***Cicalese***, 924 F.3d at 764-65, Plaintiff's allegations here do not plausibly support such an inference. The Amended Complaint alleges that Grayson made these comments after he was hired by the HCBOS as law enforcement personnel for the courthouse. At that time, Plaintiff was not employed by the HCBOS, did not work alongside Grayson as law enforcement personnel for the courthouse, and Grayson had no alleged authority or influence to terminate Plaintiff from her position with the HCSD. Thus, even accepting the allegation that Grayson made sexist comments toward Plaintiff as true, the Court cannot reasonably infer from that allegation alone that Plaintiff was terminated from her position with the HCSD because of her sex. Unlike the allegations in ***Cicalese***, where the plaintiffs alleged *specific derogatory remarks made by their supervisors* and plausibly connected those remarks to the adverse employment actions at issue, Plaintiff's conclusory allegation that Grayson made "sexist" comments does not plausibly support the inference that her termination from the HCSD was motivated by sex discrimination. Absent from the allegations is anything that would plausibly suggest causation between the remarks and Plaintiff ultimately being fired.

Lastly, Plaintiff alleges that, although Defendant Williams identified her as his interim replacement for the interim sheriff's position, the HCBOS passed her over for the position "in

order [to] harass and put her in her place as a woman." [Doc. 22 at 11]. This allegation is likewise conclusory. Plaintiff alleges no facts that tend to support her assertion that the decision was motivated by her sex. Merely alleging that the HCBOS acted to "put her in her place as a woman" is a conclusory characterization of the HCBOS's conduct and does not provide a factual basis from which the Court can reasonably infer discriminatory intent. Further, the alleged decision to pass Plaintiff over for the interim Sheriff's position is distinct from the adverse employment action underlying Plaintiff's Title VII claim—her alleged termination from the HCSD. Plaintiff does not allege facts connecting HCBOS's decision not to appoint her as interim sheriff to the decision to ultimately terminate her employment with the HCSD. She does not allege that the individuals responsible for selecting the interim sheriff were responsible for her termination(s), that the alleged discriminatory motive behind the interim appointment influenced the decision to terminate her, or otherwise explain how the decision to select another individual as interim sheriff demonstrates that she was fired from her position as captain at the HCSD because she is a woman. For these reasons, Plaintiff has not sufficiently alleged that she was fired from the HCSD because she is a woman, and her Title VII gender discrimination claim is dismissed with prejudice.

ii. Title VII – Retaliation

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge…or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To sufficiently plead a Title VII retaliation claim, a plaintiff must plead facts supporting an inference "that: (1) she 'participated in an activity protected by Title VII;' (2) her 'employer took an adverse employment action against' her; and (3) 'a causal connection exists between the protected activity and the adverse employment

action.'" ***Wallace v. Performance Contractors, Inc.***, 57 F.4th 209, 224 (5th Cir. 2023) (quoting ***Newbury v. City of Windcrest***, 991 F.3d 672, 678 (5th Cir. 2021)).

The only allegations of Plaintiff participating in activity protected by Title VII described in the Amended Complaint pertain to her 2004 EEOC charges against Defendant Foxworth and the Belzoni Police Department. *See* [Doc. 22 at 3].[16] Plaintiff asserts that, upon information and belief, all of the Defendants in this action "were aware of [her 2004 EEOC charges] against Foxworth and another officer[.]" *Id*. at 4. Plaintiff also alleges that although Defendant Williams identified Plaintiff as his interim replacement, she "was passed over for the position by HCBOS…in retaliation of her prior EEOC conduct and lawsuit[.]" *Id*. at 41. Lastly, Plaintiff broadly groups the Defendants together and alleges that "in committing the acts [as described in the Amended Complaint], the Defendants participated in retaliatory activity because of Plaintiff's prior engagement in EEOC[.]" *Id.* at 60.

The County argues that Plaintiff has failed to allege facts supporting the third causal connection element. According to the County, Plaintiff's only apparent basis for establishing causation is the fact that the EEOC proceeding preceded the alleged retaliatory termination, which, standing alone, does not establish a causal connection. The County further argues that, to establish causation based on timing alone, the protected activity and adverse employment action must occur in close temporal proximity. *See* [Doc. 90 at 10-11]. In response, Plaintiff argues, without any support, that "the ultimate question is whether the pleaded facts plausibly support the inference that the adverse employment action was taken because of protected activity." [Doc. 94 at 8]. Simply put, Plaintiff argues that the passage of time from 2004 to 2026 does not categorically bar her retaliation claim if other alleged facts plausibly support an inference of retaliatory intent. *Id.*

---

[16] *See* fn. 14.

The Court agrees with the County. As with a Title VII gender discrimination claim, "a plaintiff does 'not have to submit evidence to establish a prima facie case . . . at [the pleading] stage.'" ***Wright v. Union Pac. R.R. Co.***, 990 F.3d 428, 433 (5th Cir. 2021). Rather, the Amended Complaint only needs to "plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." ***Cicalese***, 924 F.3d at 768. To meet the pleading requirements of the causation element, Plaintiff "had to plead facts permitting a reasonable inference that [the County] terminated her because of her [2004 EEOC charge]." ***Wright***, 990 F.3d at 433 (citing ***Iqbal***, 556 U.S. at 678).

At the pleading stage, an employee meets her prima facie burden with factual allegations that an adverse employment action occurred shortly after a protected activity. *See* ***Strong v. Univ. Healthcare Sys., L.L.C.***, 482 F.3d 802, 808 (5th Cir. 2007); *see also* ***Lyons v. Katy Indep. Sch. Dist.***, 964 F.3d 298, 305 (5th Cir. 2020) ("Close timing between an employee's protected activity and an adverse action against [her] may provide the causal connection" required to make out a claim of retaliation.); ***Fiest v. La.***, 730 F.3d 450, 454 (5th Cir. 2013) (the causal connection element can be satisfied by alleging "close timing between an employee's protected activity and an adverse action against him."). "Such temporal proximity must generally be 'very close.'" ***Fiest***, 730 F.3d at 454 (quoting ***Clark Cnty. Sch. Dist. v. Breeden***, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d. 509 (2001)). As the Fifth Circuit explained in ***Wright***, a two-year lapse, three-year lapse, and a twenty-month lapse are all "indeed too remote to permit a reasonable inference of causation." 990 F.3d at 433-34 (citing ***Clark Cty. Sch. Dist. v. Breeden***, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d. 509 (2001)); ***Leal v. McHugh***, 731 F.3d 405, 417 (5th Cir. 2013)). As explained herein, Plaintiff's EEOC charges for which she forms the basis of her Title VII retaliation claim were brought in 2004. Those 2004 charges were also brought against the Belzoni Police

Department, which is not a party to this lawsuit, and not the HCSD. Such a large time gap fails to provide the Court with the causal connection needed to establish a claim under Title VII, and the claim is dismissed with prejudice.

iii. ADEA Claim

"To survive a Rule 12(b)(6) motion to dismiss, an ADEA complaint must plead enough facts to state a claim to relief that is plausible on its face." ***Bourgeois v. Travis Cnty.***, 2026 U.S. Dist. LEXIS 162569, at *9-10 (W.D. Tex. July 22, 2026) (citing ***Norsworthy v. Hous. Indep. Sch. Dist.***, 70 F.4th 332, 336 (5th Cir. 2023)). Although a plaintiff is not required to establish a *prima facie* case with evidence at the pleading stage, she still must "'plead sufficient facts on *all of the ultimate elements*' of the claim." ***Norsworthy***, 70 F.4th at 336 (quoting ***Chhim***, 836 F.3d at 470). "And to frame that inquiry, a district court may find it helpful to reference ***McDonnell Douglas***." ***Id*** (citation omitted). These elements require a plaintiff to allege facts showing that they: (1) belonged to a protected class (forty years of age or older); (2) were qualified for the position; (3) suffered a final, adverse employment decision; and (4) were either (a) replaced by someone outside of the protected class or (b) otherwise treated less favorably than others who were similarly situated but outside of the protected class. ***Id***. at 337 (citing ***Ross v. Judson Indep. Sch. Dist.***, 993 F.3d 315, 321-22 (5th Cir. 2021)).

Looking to the allegations in the Amended Complaint, the Court finds Plaintiff has not alleged sufficient facts as to the claims above. There are no specific factual allegations provided in the Amended Complaint regarding how Plaintiff was treated differently or less favorably than another similarly situated employee under the age of forty. The Amended Complaint also fails to allege that, on any of the occasions Plaintiff was fired, she was replaced by someone under the age of forty. The closest Plaintiff comes to demonstrating either of these required elements is by

alleging that “Defendants[’] actions were motivated by Plaintiff’s gender and age given that male officers and younger officers in the Sheriff’s department were not subject to the same attacks.” [Doc. 22 at 5]. But the ADEA requires "an employee [to] proffer a comparator who was treated more favorably 'under nearly identical circumstances,' which is satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" ***Reyna v. Donley***, 479 F. App’x 609, 611-12 (5th Cir. 2012) (quoting ***Lee v. Kan. City S. Ry. Co.***, 574 F.3d 253, 260 (5th Cir. 2009)). Plaintiff fails to do so here. For these reasons, Plaintiff has not alleged sufficient facts for the Court to draw the reasonable inference that she was discriminated against because of her age. The ADEA claim is therefore dismissed with prejudice.

B. Constitutional Law Claims

A municipality cannot be held liable under section 1983 on a *respondeat superior* theory. ***Monell v. Dep’t of Soc. Servs. of City of New York***, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Instead, to establish municipal liability, a plaintiff must identify (1) a policy maker; (2) an official policy or custom; and (3) a violation of constitutional rights which is the moving force behind the violation. ***Monell***, 436 U.S. at 694. To show that a municipal policy or custom was the moving force behind a constitutional violation, a plaintiff must allege facts tending to show a direct causal link between the policy or custom and the alleged constitutional violations. ***Piotrowski v. City of Houston***, 237 F.3d 567, 580 (5th Cir. 2001). To survive the pleading stage, a complaint must describe a policy or custom of the municipality and provide specific facts that exhibit a relationship to a plaintiff’s underlying constitutional violation in a non-conclusory manner. ***Henderson v. Harris Cnty. Tex.***, 51 F.4th 125, 130-31 (5th Cir. 2022).

The Fifth Circuit has identified three routes to establish an official policy or custom for purposes of municipal liability. First, the official policymaker can announce or establish an official policy of the municipality. ***Zarnow v. City of Wichita Falls***, 614 F.3d 161, 168 (5th Cir. 2010). Second, a "persistent widespread practice" of the municipality's officials or employees "which, although not authorized by officially adopted and promulgated policy" can be "so common and well settled as to constitute a custom that fairly represents municipal policy." ***Webster v. City of Hous.***, 735 F.3d 838, 841 (5th Cir. 1984). Third, a single unconstitutional act by a final policymaker. ***Zarnow***, 614 F.3d at 169.

Plaintiff does not allege that a written policy statement or formal directive of the County resulted in a deprivation of her constitutional rights. Additionally, all of the claims against the individual defendants have been dismissed for failure to establish an underlying constitutional violation, so there can be no single unconstitutional act by an official policymaker. *See* ***Thomas***, 2026 U.S. Dist. LEXIS 102369, at *11 ("Without a predicate constitutional violation there can be no ***Monell*** liability."). The Amended Complaint also fails to plead a sufficient "pattern and practice" claim, which would require Plaintiff to point to other similar instances of employees being fired in violation of their constitutional rights. *See* ***Davis v. City of Stafford***, 848 F.3d 384, 396 (5th Cir. 2017) ("In order to find a municipality liable for a policy based on a pattern, that pattern must have occurred for so long or so frequently that the course of conduct is the expected, accepted practice of city employees. A pattern requires similarity, specificity, and sufficiently numerous incidents.").

Lastly, Plaintiff's failure to train or supervise claim is conclusory and must be dismissed. To prevail on a failure to train or supervise claim, Plaintiff must establish that (1) the County failed to train or supervise its employees; (2) there is a causal connection between the alleged failure to

supervise or train and the alleged violation of her constitutional rights; and (3) that the failure to train or supervise constituted deliberate indifference to her constitutional rights. *See* ***Edwards v. City of Balch Springs***, 70 F.4th 302, 312 (5th Cir. 2023). The claim fails for multiple reasons, but chief among them is the absence of a constitutional violation. To establish that a supervisor acted, or failed to act, with deliberate indifference to constitutional violations committed by subordinates, there must be an underlying constitutional violation. *See* ***Wernecke v. Garcie***, 951 F.3d 386, 401 (5th Cir. 2009); *see also* ***Rios v. City of Del Rio***, 444 F.3d 417, 425 (5th Cir. 2006). Plaintiff also fails to allege a "pattern of similar constitutional violations by untrained employees." ***Connick v. Thompson***, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). As explained herein, the allegations have failed to support a violation of Plaintiff's constitutional rights, so the failure to train claim must be dismissed. For these reasons, the Court finds that Plaintiff has failed to plead sufficient factual material, accepted as true, to state a viable ***Monell*** claim against the County. All claims against the County are therefore dismissed with prejudice.

## III. Conclusion

For the foregoing reasons, Defendant Mickey Foxworth's [85] Motion for Judgment on the Pleadings and Defendant Humphreys County, Mississippi's [89] Motion to Dismiss are hereby **GRANTED**, and all claims against them are **DISMISSED WITH PREJUDICE**. A separate Order and Rule 58 Final Judgment shall issue.

**SO ORDERED**, this the 2nd day of September, 2026.

Robert P. Chamberlin

UNITED STATES DISTRICT JUDGE